UNITED STATES, Appellee

v.

Stephen R. GRAY, Private First Class,
U.S. Marine Corps, Appellant.

No. 54,793.
NMCM 85–4234.

U.S. Court of Military Appeals.

April 25, 1988.

For Appellant: *Lieutenant Colonel Richard E. Ouellette,* USMC (argued).

For Appellee: *Lieutenant Kevin R. Smith,* JAGC, USNR (argued); *Captain Wendell A. Kjos,* JAGC, USN (on brief); *Captain Carl H. Horst,* JAGC, USN, and *Lieutenant Aaron Santa Anna,* JAGC, USNR.

OPINION

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Marine Corps Air Station, Kaneohe Bay, Hawaii. Contrary to his pleas entered on June 19, 1985, he was found guilty of aggravated assault, in violation of Article 128(b) of the Uniform Code of Military Justice, 10 U.S.C. § 928(b). On June 20, 1985, appellant was sentenced to a bad-conduct discharge, confinement for 4 months, total forfeitures for 4 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings of guilty and the sentence. 21 M.J. 1020 (1986).

This Court granted review of the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW PROPERLY APPLIED THE TERM "WHEN NO CHARGES ARE PENDING" AS USED IN RULE 707(b)(2) OF THE RULES FOR COURTS–MARTIAL.

For different reasons, a majority of this Court holds that the Court of Military Review incorrectly applied this court-martial rule of procedure. Nevertheless, any error was harmless since each Judge's application of this rule in the present case leads to the same or substantially the same result as that reached by the court below. *See generally United States v. Jones,* 23 M.J. 301 (C.M.A.1987).

The parties to this trial accepted *inter alia* the following facts pertaining to appellant's speedy-trial motion:

| DATE | SPECIFIC EVENTS |
|------|-----------------|
| 6 Dec 1984 | Date of alleged offenses; accused placed in pretrial confinement. |
| 31 Dec 1984 | Accused's immediate commanding officer conducts preliminary inquiry into allegations. |
| 3 Jan 1985 | Regimental command requests Article 32 investigation. |
| 4 Jan 1985 | Accused's release from pretrial confinement. |

| DATE | SPECIFIC EVENTS |
|------|-----------------|
| 6 Feb 1985 | Preferral of charges. |
| 15 Feb 1985 | Investigating officer appointed for Article 32 hearing; receipt of sworn charges by the regimental command. |
| 19 Feb 1985 | Notification to the accused of preferral of charges. |
| 6 Mar 1985 | Accused retained civilian counsel. |
| 8 Mar 1985 | Defense request for continuance; Government...prepared to proceed with Article 32 investigation; indefinite continuance granted. |

The court below stated the following concerning this motion:

No demand for speedy trial was made by the appellant. In ruling upon the defense motion to dismiss for denial of speedy trial, the military judge held that the speedy trial clock began on 7 December 1984, and that total delay for speedy trial purposes, as of 10 June 1985, the date of the last defense continuance, was 186 days. The defense conceded responsibility for forty-one days of this delay. The military judge held the defense responsible for a total of 70 days, including the challenged periods. We need not assess the calculations of the military judge because he erred in starting the speedy trial clock on 7 December 1984.

21 M.J. at 1022.

The effect of this ruling was to remove an additional 74 days of government accountability and establish the total government delay at 42 days, well below the 116 found by the military judge and the more than 120 days required for relief by R.C.M. 707(a), Manual for Courts-Martial, United States, 1984.

----------

This case clearly calls for an interpretation and application of R.C.M. 707. *United States v. Turk*, 24 M.J. 277 (C.M.A.1987). *Cf. United States v. Burris*, 21 M.J. 140 (C.M.A.1985); *United States v. Leonard*, 21 M.J. 67 (C.M.A.1985). The best place to start is the rule itself.

R.C.M. 707 states, *inter alia:*

Rule 707. Speedy trial

(a) *In general.* The accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier.

(b) *Accountability.*

(1) *In general.* The date on which the accused is notified of the preferral of charges or the date on which pretrial restraint is imposed shall not count for purpose of computing the time under subsection (a) of this rule. The date on which the accused is brought to trial shall count.

(2) *Inception.* If charges are dismissed, if a mistrial is granted, or—*when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted.*

(Emphasis added.)

The broad question before us in this case is on what date did the 120-day speedy-trial clock provided in R.C.M. 707(a) begin to run for the Government. The military judge, relying on the pretrial restraint provision of R.C.M. 707(a), held this speedy-trial clock began to run on December 7, 1984, the day after appellant was placed in pretrial confinement. *See* R.C.M. 707(b)(1). Appellate defense counsel agrees. They both conclude that the later inception date provided in R.C.M. 707(b)(2) was inapplicable in appellant's case. They assert, for somewhat different reasons, that charges were pending against appellant when he was released from confinement on January 4, 1985. On the contrary, the Court of Military Review held that charges were not pending against appellant on that date. Relying on R.C.M. 707(b)(2), it further ruled that the trial clock began to run on February 19, 1985, the day appellant was notified of the charges preferred against him.

We all agree with the court below that charges were not pending against appellant at the time of his release from confine-

ment. I further conclude that the speedy-trial clock started on February 20, 1985, but I base my conclusion on the notice-of-preferral provision of R.C.M. 707(a). *See* R.C.M. 707(b)(1). *Assuming arguendo that R.C.M. 707(b)(2) applies to this case,* I would hold that the 120–day-speedy-trial clock started on February 6, 1985, the day when charges were preferred against appellant.

## I

The first question concerning this rule which we must resolve is whether the granted issue is the right question to ask in the present case. It basically queries the meaning of the words "when no charges are pending," found in R.C.M. 707(b)(2). In order to reach this question, all parties to this appeal assumed that the day after appellant's pretrial confinement on December 6, 1984, started the 120–day-speedy-trial clock of R.C.M. 707(a). *See* R.C.M. 707(b)(1). They then proceeded to determine whether this speedy-trial clock stopped when appellant was released from this same pretrial restraint on January 4, 1985. R.C.M. 707(b)(2). However, if appellant's pretrial restraint was not the type which started this clock, there would be no logical reason to determine whether it was later stopped by his release. *See generally United States v. Johnson,* 17 M.J. 255 (C.M.A.1984).

Admittedly, R.C.M. 707(a) simply says "the imposition of restraint under R.C.M. 304." Moreover, R.C.M. 304(a) expressly refers to restraint "imposed before and during disposition of offenses." However, to start a speedy-trial clock solely because of arrest and confinement without regard to the pendency of formal charges would be extremely unusual. *See* A.B.A. Standards, Speedy Trial, § 12–2.2, Commentary at 12.24 (2d ed. 1982). Moreover, it would be inconsistent with Supreme Court precedents on the Sixth Amendment constitutional right to speedy trial which require that charges be pending before the speedy-trial clock is started. *See United States v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497,

1500, 71 L.Ed.2d 696 (1982); *Dillingham v. United States,* 423 U.S. 64, 66, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). *See generally United States v. Stead,* 745 F.2d 1170, 1172–73 (8th Cir.1984). Finally, there are numerous federal appellate opinions interpreting the inception language in the Federal Speedy Trial Act of 1974, 18 U.S.C. § 3161(b) (*i.e.,* arrest) to require an arrest when a federal criminal complaint has been filed. *See United States v. Lee,* 818 F.2d 302, 304–05 (4th Cir.1987); *United States v. Johnson,* 815 F.2d 309, 312 (5th Cir. 1987); *United States v. Copley,* 774 F.2d 728, 729 n. 1 (6th Cir.1985), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *United States v. Sanchez,* 722 F.2d 1501, 1509 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Jones,* 676 F.2d 327, 328–31 (8th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982).

The drafters of R.C.M. 707 frankly acknowledged their indebtedness to all of the above models. *See* App. 21, Analysis of R.C.M. 707, p. A21–36 to A21–37, Manual, *supra.* Surely such a radical departure from them on this point would at least have been noted. *See also United States v. Amundson,* 23 U.S.C.M.A. 308, 310–11, 49 C.M.R. 598, 600–01 (1975).

I also observe that a broad reading of R.C.M. 707(a) would render the alternative inception date provided in R.C.M. 707(b)(2) indeterminable in cases where charges were not yet pending during initial arrest and confinement. *See* Wittmayer, *Rule for Courts-Martial 707: The 1984 Manual for Courts-Martial Speedy Trial Rule,* 116 Mil.L.Rev. 221, 233 (1987). More particularly, confinement without pending charges would essentially start the 120–day-speedy-trial clock under this reading of R.C.M. 707(a). Consequently, release from this confinement would stop the clock under R.C.M. 707(b)(2) because no charges could be pending at the time of release. However, since no charges were ever pending

against the accused, a *re*-institution of charges would be technically impossible.

The models upon which this rule was based and its structure as a whole strongly suggest that only pretrial restraint when charges are pending is sufficient to start the clock under R.C.M. 707(a). While this Court may not be free to interpret words plain on their face, it is free to construe various sections of such a regulatory rule consistently and rationally. *See United States v. Leonard*, 21 M.J. at 69. Accordingly, the real issue to me is whether charges were pending against appellant at the time of his arrest and confinement for purposes of R.C.M. 707(a).

## II

When charges are pending in the military justice system, at least for purposes of R.C.M. 707(a), is a new question for this Court. Moreover, no explanation of this legal point is provided in R.C.M. 707 or any other Rule for Courts-Martial. Finally, neither the discussion nor the analysis to these rules clearly demarcates this moment in time. However, there does exist a significant body of military law on when charges are pending in the military justice system at least for speedy-trial purposes. Since these cases were decided or authorities existed prior to the promulgation of R.C.M. 707 and no express disclaimer appears, it is reasonable to assume the same understanding on this point applies for R.C.M. 707.

A charge in the military justice system is an allegation of a legal violation accompanied by a statement of facts constituting an alleged offense. *See* R.C.M. 307(c). The authorities upon which R.C.M. 707 was modeled generally agree that it is the filing of a criminal complaint with a court which constitutes institution of formal charges against an accused. In this light and in view of our past precedent, charges are pending[1] in the military justice system when charges are preferred. *United States v. Johnson, supra* at 261; *United States v. McGraner*, 13 M.J. 408, 413 (C.M.A.1982); *United States v. Amundson, supra. See generally* Wittmayer, *supra* at 236; D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 6.1 (2d ed. 1987); G. Davis, *A Treatise on the Military Law of the United States* 76–77 (1913); W. Winthrop, *Military Law and Precedents* 153–54 (2d ed. 1920 Reprint).[2]

Of course, the military judge held differently in this case. He held that charges were pending against appellant when his immediate commander began to investigate these offenses before preferral of charges. *See* R.C.M. 301(b) and 303. He also asserted that charges were pending when an intermediate commander forwarded unpreferred charges to the court-martial authority requesting an investigation under Article 32, UCMJ, 10 U.S.C. § 832, be ordered. R.C.M. 306(c)(5). Appellate defense counsel also argues that charges were pending in this case simply because appellant was confined. He cites Articles 10, 13, and 33, UCMJ, 10 U.S.C. §§ 810, 813, and 833, respectively, for the proposition that charges are pending in the military justice system prior to receipt of preferred charges. *See also* JAGMAN 0151 and R.C.M. 305(i). However, we all agree with the appellate court below that it is the absence of formality of these charges at these various points in time which leads to each one's rejection as the touchstone for when charges are pending in the military justice system.

---

1. *Black's Law Dictionary* 1021 (5th ed. 1979) generally defines "[p]ending" as meaning, "[b]egun, but not yet completed..."

2. The fact that anyone can prefer charges in the military justice system (R.C.M. 307(a)) does not lead to a different conclusion. Literally, the same statement may be made concerning federal criminal charges. Fed.R.Crim.P. 3 and 5; *see United States ex rel. Savage v. Arnold*, 403 F.Supp. 172, 173–74 (E.D.Pa.1975). *See generally* Wright, *Federal Practice and Procedure: Criminal 2d* § 42 at 34 (1982). Moreover, most charges in the military justice system are preferred by command authorities. *See* Wittmayer, *Rule for Courts-Martial 707: The 1984 Manual for Courts-Martial Speedy Trial Rule*, 116 Mil.L.Rev. 221, 236 (1987); D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 6.1 at 177 (2d ed. 1987).

In the present case, charges were not preferred against appellant prior to his arrest. R.C.M. 304. *See* Fed.R.Crim.P. 4. Moreover, charges were not formally preferred against him during his 29 days of pretrial confinement. R.C.M. 305. *Cf.* Fed.R.Crim.P. 5(a). Accordingly, formal charges were not pending during his incarceration, and this pretrial restraint did not start the speedy-trial clock of R.C.M. 707(a). Moreover, in view of his subsequent release from confinement on January 4, 1985, and the absence of further pretrial restraint, I find that the pretrial-restraint provision of R.C.M. 707(a) was simply inapplicable in this case. *See* A.B.A. Standards, *supra* at 12.19 to 12.21. *See United States v. Amuny*, 767 F.2d 1113, 1120 (5th Cir.1985). Accordingly, appellant's subsequent notification of preferred charges on February 19, 1985, essentially started this clock under the notice provision of R.C.M. 707(a) and day one was February 20, 1985. R.C.M. 707(b)(1).

### III

Of course, my construction of R.C.M. 707 is not joined by my Brothers,[3] so it is necessary to reach the particular issue granted for review. If R.C.M. 707(b)(2) is applicable in this case, then I hold that the 120–day-speedy-trial clock of R.C.M. 707(a) started on February 6, 1985, the day charges were preferred against appellant. R.C.M. 307. Accordingly, I would still affirm the result reached by the court below in rejecting appellant's speedy-trial claim.

The first step in reaching this conclusion is acceptance of the lower court's conclusion that appellant was released from confinement "for a significant period" of time as intended in R.C.M. 707(b)(2). In this regard, I note that appellant was previously confined for a period of 29 days beginning on December 6, 1984. After his release from confinement on January 4, 1985, he was not reconfined prior to the preferral of charges against him on February 6,

1985. This was a period of approximately 34 days. It also must be noted that he was not reconfined during the remaining 113–day period leading to his trial on June 10, 1985. Clearly the record supports a finding that his release on January 4, 1985, was "for a significant period" of time.

It next must be decided whether "no charges" were "pending" against appellant when he was released from confinement on January 4, 1985. As earlier stated, charges are pending in the military justice system for purposes of R.C.M. 707(a) at the time that they are preferred in accordance with R.C.M. 307. Consistent with this conclusion, no charges are pending in the military justice system for purposes of R.C.M. 707(b)(2) prior to the above-noted time. Accordingly, the Court of Military Review was correct in finding that no charges were pending against appellant when he was released from confinement on January 4, 1985.

The final point I must address is when the speedy-trial clock started in appellant's case under R.C.M. 707(b)(2). He was not reconfined prior to his trial, so no "restraint" was "reinstituted." However, assuming his initial arrest and confinement are viewed as his being "held to answer for a charge," his release from this confinement without preferral of charges might also be viewed as dropping these *de facto* charges. *See United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. Antonino*, 830 F. 2d 798, 804 (7th Cir.1987). *See generally A.B.A. Standards, supra* at 12.20 to 12.21. In this light, the subsequent preferral of formal charges might then be considered as a re-institution of the charges for which he was originally held to answer. Accordingly, in my opinion, the date of preferral, February 6, 1985, starts the speedy-trial clock under R.C.M. 707(b)(2).

---

3. The divergent constructions and interpretations of R.C.M. 707 expressed by myself, my Brothers, the court below, and the military judge suggest that some redrafting of this rule might be appropriate.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

## A

In my view, the Manual for Courts-Martial clearly dictates rejection of Gray's claim; but I differ with the lead opinion concerning the route to this result. R.C.M. 707(a), Manual for Courts-Martial, United States, 1984, requires that, in general, "[t]he accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier." As I read this language, an accused placed in pretrial confinement is entitled to the benefit of the 120-day time limit, whether he receives notice of preferral of charges. Otherwise, the Government could avoid the operation of R.C.M. 707(a) by placing an accused in pretrial restraint and then failing either to prefer charges against him or to notify him that charges had been preferred.

Moreover, the existence of pretrial "restraint" does not depend on the preferring of charges or the giving of notice of those charges. According to R.C.M. 304(a)(4), "[p]retrial confinement is physical restraint, imposed by order of competent authority, depriving a person of freedom *pending disposition of offenses.*" (Emphasis added.) Thus, the Manual contemplates that an accused may be restrained under R.C.M. 304(a)(4) prior to preferral of charges *; but that even in this event, he will be protected under R.C.M. 707(a).

Although Federal criminal practice under the Speedy Trial Act often is instructive, it is irrelevant in the present context. In the Federal District courts, some type of criminal complaint is usually filed prior to or immediately after an accused is arrested; and so a charging document exists at a very early stage—even though the indict-ment often will come later. Moreover, an accused prosecuted in a Federal District Court has a right of bail; but this right does not exist in trials by courts-martial. With this in mind, Congress commanded in Article 10 of the Code, 10 U.S.C. § 810, that "*immediate steps* shall be taken to inform ... [the accused] of the specific wrong of which he is accused *and to try him* or to dismiss the charges and release him." (Emphasis added.) Likewise, the President in R.C.M. 707(a) has attempted to minimize pretrial restraint and assure speedy trials. This intent of Congress and the President would be contravened were we to disregard the plain language of R.C.M. 707(a) and rule that, under 707(a), restraint prior to preferring of charges does not start the 120-day clock.

The President also recognized that, after initially being apprehended and confined before trial, an accused may be released from confinement and that it would be desirable to specify the effects of such release. Of course, if charges have already been preferred and notice given thereof, release from pretrial restraint would be irrelevant, because under R.C.M. 707(a), notice to the accused of preferral of charges is itself an event which starts the 120-day speedy-trial period.

It is conceivable that an accused could be in confinement and not have received notice of the preferral of charges. However, this would be extraordinary, because R.C.M. 308 requires that the accused's immediate commander cause him "to be informed of the charges preferred ... as soon as practicable," and it should be very easy to provide such information to an accused who is in confinement. Thus, as R.C.M. 707(b)(2) is written, release of an accused is immaterial if charges have been preferred, regardless of the lack of any notice thereof to the accused.

If an accused has been in confinement but no charges have been preferred, then,

---

* Of course, R.C.M. 304(e) directs that the person "under restraint ... be informed of the nature of the offense which is the basis for such restraint."

according to 707(b)(2), release "from pretrial restraint for a significant period" will stop the running of the 120–day clock. If "restraint" is "reinstituted," the 120–day period will begin again but will not be tacked on to the earlier period of restraint. The words "for a significant period" were designed to forestall use of the tactic of releasing an accused for a few hours or a day and then reconfining him and claiming that the 120–day clock must be started anew.

If charges were preferred during the original period of restraint but were dismissed, an accused who has been released from confinement will not be credited for speedy-trial purposes with the time that he originally spent in pretrial confinement. Instead, the Government will be accountable only from the date of reinstitution of the charges. The Rule does not specify whether reinstitution means only the re-preferring of charges or whether it also requires notice that the charges have been re-preferred. On the one hand, it can be argued that omission of any reference to notice was deliberate and that the re-preferring of the charges is sufficient to constitute reinstitution. On the other hand, there seems little point in requiring notice as a triggering event for speedy-trial purposes when charges are first preferred and not requiring it when the charges are re-preferred or preferred for the first time after an accused has been placed in pretrial restraint and then released from confinement "for a significant period." Fortunately, I need not resolve this issue now, since it is immaterial to the decision of Gray's appeal.

R.C.M. 707(b)(2) also deals with the granting of a mistrial; and apparently such an event eliminates consideration of time already spent in pretrial restraint. It is unclear to me what constitutes reinstitution of charges after a mistrial, since the charges have never been dismissed and remain pending. That question also is not before us at this time.

B

In light of my interpretation of the applicable Manual language, I conclude that, when Gray was originally placed in pretrial confinement on December 6, 1984, the 120–day period prescribed under R.C.M. 707(a) began to run pursuant to R.C.M. 304(a)(4). However, when appellant was released from pretrial confinement on January 4, 1985, and this release was followed by "a significant period" of almost a month's liberty, the earlier restraint became irrelevant. The stop watch was reset at zero.

A new 120–day period did not begin to run until after charges finally had been preferred in February. Under these circumstances, the Government's delay was well within the 120–day limitation; and the military judge properly denied the defense speedy-trial motion.

COX, Judge (concurring in the result):

I agree with Chief Judge Everett that release from confinement for "a significant period" of liberty resets "[t]he stop watch ... at zero." 26 M.J. 22.

If that be true, it then follows that R.C.M. 707(a) becomes the operative switch to restart "[t]he stop watch." Following this logic, "[t]he stop watch" is started by notification "of preferral of charges." R.C.M. 707(a). That date was February 19, 1985.

On the other hand, if charges had been "dismissed," then the operative date for starting the clock is the date "charges ... are reinstituted." R.C.M. 707(b)(2). Here, no charges were preferred until after appellant had been released from confinement. Hence, there was nothing to "reinstitute."

Judge Mitchell, writing for the Court of Military Review, made this important point which is worth repeating:

[T]he first "formalization" of any charge under military court-martial procedure comes with charge preferral and notification thereof to the accused. See R.C.M.

307 and 308. This is so because any person subject to the UCMJ can prefer charges but such preferral does not signal the *Government's* institution of formal charges.

21 M.J. 1020, 1024.

However, as Judge Sullivan points out, "preferral" of charges initiates the proceedings against an accused and signals the moment charges are "pending." 26 M.J. at 19 (citing numerous precedents). The distinction is that speedy-trial accountability does not begin until the charges are formalized by notification to an accused under R.C.M. 308.

Because the speedy-trial clock started on February 19, 1985, appellant was not denied a speedy trial.