**UNITED STATES**

v.

**Clint D. NELSON, 422 92 2326, Gunner's Mate (Guns) Seaman Recruit (E–1), U.S. Navy.**

**NMCM 87 0446.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 Oct. 1986.

Decided 30 June 1988.

LCDR. Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

Lt Christine M. Hayes, JAGC, USNR, Appellate Defense Counsel.

Maj. F.F. Krider, USMC, Appellate Government Counsel.

Before BYRNE, COUGHLIN and GLADIS, JJ.

GLADIS, Judge:

The accused was tried by a general court-martial on 9, 10, and 14 October 1986. In accordance with his conditional pleas of guilty, he was convicted of nine specifications of violation of Article 92 of the Uniform Code of Military Justice (UCMJ) and one specification of violating Article 134, UCMJ, 10 U.S.C. 892 and 934, respectively. Essentially, the accused violated Article 1147 of U.S. Navy Regulations either by wrongfully giving or soliciting to give answers to Navy students or by wrongfully recording that the students had passed tests when they had not done so. The military judge sentenced him to a bad-conduct discharge, total forfeitures, and confinement for three months. The convening authority approved the sentence but suspended all confinement for one year from

the date of his action with a provision for automatic remission.

This is the second general court-martial conviction the accused has received for these types of offenses. All of the offenses he was tried for at both courts-martial were committed prior to 25 February 1986.

The accused contends that the military judge erred in denying defense motions to dismiss charges because of failure to try all known offenses at his earlier trial on similar charges on 30 May 1986 and denial of speedy trial.

We set aside the findings of guilty of Specifications 1 through 5 and Specification 9 of Charge I and Specification 2 of Charge II because the accused was denied his right to a speedy trial on these offenses under Rule for Courts–Martial (R.C.M.) 707(d), Manual for Courts–Martial, United States, 1984, and *United States v. Burton*, 21 U.S. C.M.A. 112, 44 C.M.R. 166 (1971), but we affirm the findings of guilty of Specifications 6, 10, and 11 of Charge I because the accused was not denied his constitutional, codal, judicially-created, or regulatory rights to a speedy trial on these offenses and, under the circumstances, the convening authority did not abuse his discretion in failing to refer these offenses to trial with the other offenses.[1] We set aside the sentence, authorizing a rehearing thereon.

I

The accused was confined on 25 February 1986 for wrongfully selling test answers, wrongfully communicating threats, and fraternization. Before the accused had been confined, statements had been taken by Naval Investigative Service (NIS) investigators from Suppes, one of the individuals to whom the accused had sold answers. This sale was the foundation for one of the six specifications for which the accused was tried at his first trial on 30 May 1986. The Suppes statement further indicated that the accused had provided answers to other unidentified individuals. Shortly after the accused was confined, statements were taken on 25 February 1986 from three other individuals, Clark, Blaylock, and Dexter, to whom the accused had given answers. These provided the basis for some specifications tried on 30 May 1986. Two of the individuals had provided answers or stamps indicating achievement which had not been attained, both of which had been sent to them by the accused, to others. One of these statements identified sixteen individuals who had been provided with answers. The names of some of the sixteen were mentioned in one of the other statements. The accused's supplying of test answers and stamps to several of the sixteen, Fortier, Steadman, Salefski, Benton, Thrift, Spickelmier, Stanton, and Baughman, was the subject of most of the specifications referred to trial in October 1986. A statement was taken from another of the sixteen, Ullman, on 27 February 1986. The accused's solicitation of Ullman was the subject of one of the specifications tried in October 1986.

On 28 February 1986, the accused's commanding officer requested that a reviewing officer approve continued pretrial confinement pursuant to R.C.M. 305(i) until the conclusion of the investigation and the date of trial. He indicated that he had reviewed a NIS memorandum referencing the statements implicating the accused, that the accused was still under investigation, and that it was unknown at that time how widespread the sale of test answers might be.[2] Subsequently, in March and April 1986, statements were taken from Fortier, Steadman, Benton, Salefski, Thrift, and Violette. These statements were not forwarded to the accused's command until 1 May 1986.

The charges upon which the accused was tried at his first court-martial on 30 May 1986 were preferred on 20 March 1986. The accused was notified of their preferral on 3 April 1986. An Article 32 investiga-

---

1. Pursuant to defense motion, Specifications 7 and 8 of Charge I were dismissed by the military judge for lack of speedy trial and failure to join all known offenses.

2. Although the commanding officer may not have read the statements, they apparently were available to him.

tion was ordered on 10 April 1986. The investigation was held on 6 May 1986. The statements which were the subject of most of the charges for the accused's second court-martial tried in October 1986 were introduced at the investigation although charges had not been preferred on the basis of them and the investigating officer stated in his report, "Although the accused may have committed additional offences [sic] it is recommended that the accused by [sic] tried on the original charges since time is now of the essence." The officer who had convened the Article 32 investigation forwarded the investigating officer's report to the officer exercising general court-martial jurisdiction on 7 May 1986 recommending trial by general court-martial. Only the charges recommended by the investigating officer were referred to trial by general court-martial on 12 May 1986 and the accused was arraigned on 15 May 1986. The military judge granted a defense request for a continuance until 30 May 1986. Trial was completed on that date. The defense did not request joinder of all known offenses at that trial.

Most of the charges for which the accused was tried in October 1986 were preferred on 9 June 1986 and the accused was notified of preferral on 10 June 1986. An Article 32 investigation was ordered on 3 July 1986. The investigation was held on 7 July 1986. Defense counsel urged that the charges be dismissed for failure to join all known offenses at the accused's first court-martial. The investigating officer forwarded his report recommending trial by general court-martial on 31 July 1986. Additional charges had been preferred on 18 July 1986 and the accused notified of their preferral on 21 July 1986. An Article 32 investigation into these additional charges was ordered on 29 July 1986. The investigation was held on 28 August and 2 September 1986. The investigating officer forwarded his report on 5 September 1986 recommending trial by special court-martial. The charges preferred on 9 June 1986 and the additional charges preferred on 18 July 1986 were consolidated and referred to trial by general court-martial on 30 October 1986. At an R.C.M. 802 conference on that

date the defense asserted the accused's statutory right to a five-day delay between service of charges and trial. *See* Article 35, UCMJ, 10 U.S.C. 835. Trial commenced on 9 October 1986. Most of the charges tried on 9 October were based on the statements taken in March and April 1986 and submitted to the Article 32 investigation held on 6 May 1986.

The military judge in the court-martial presently before us granted in part defense motions to dismiss for lack of speedy trial and failure to join all known offenses, dismissing four specifications involving Spickelmier and Stanton because the accused had been placed in pretrial confinement for these offenses and no further investigation was required or undertaken. He denied these motions as to the remaining charges.

## II

The bases for a military accused's right to a speedy trial are found in the sixth amendment to the U.S. Constitution; Article 10, UCMJ, 10 U.S.C. 810; the landmark decision in *United States v. Burton*, 44 C.M.R. 166; and R.C.M. 707 of the Manual for Courts–Martial (MCM).

The sixth amendment right applies only after charges are formally preferred or there is actual restraint and holding to answer the criminal charges. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *United States v. McGraner*, 13 M.J. 408, 413 (C.M.A. 1982). Extensive delay in preferring charges, however, violates due process if it amounts to a violation of those fundamental conceptions of justice which lie at the base of our civil and political institutions. *United States v. Lovasco, supra* at 790, 97 S.Ct. at 2048–49. Determination of whether an accused's sixth amendment right to a speedy trial has been violated requires a functional analysis of the right in the particular context of the case, balancing the length of the delay, the reason for the delay, the accused's assertion of the right, and prejudice to the accused. *United*

*States v. Johnson,* 17 M.J. 255 (C.M.A. 1984) (citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

■ The statutory right to a speedy trial, as provided by Article 10, UCMJ, is applicable only after the accused is placed in arrest or confinement. *United States v. Nelson,* 5 M.J. 189 (C.M.A.1978).

■ In *Burton,* the Court of Military Appeals, exercising a supervisory role over military justice in an effort to protect an accused's right to a speedy trial under Article 10, promulgated a new speedy trial rule. *United States v. Ivester,* 22 M.J. 933, 935 (NMCMR 1986). Under the *Burton* rule, when pretrial confinement exceeds 90 days a judicial presumption arises that the accused has been denied his right to a speedy trial and places on the Government a heavy burden to show diligence by demonstrating that really extraordinary circumstances contributed to the delay or the charges will be dismissed. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974); *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *United States v. Burton, supra.*

■ The right provided by R.C.M. 707 is two-fold. R.C.M. 707(a) requires that an accused be brought to trial within 120 days of notice to the accused of preferral of charges or the imposition of restraint. R.C.M. 707(d), applicable when pretrial arrest or confinement exceeds 90 days, is similar but less strict than the *Burton* rule because in computing 90 days some periods that are excludable under R.C.M. 707 may not be excludable under *Burton. See United States v. Harvey,* 23 M.J. 280 (C.M. A.1986) (memorandum opinion).

R.C.M. 707 provides in part:

(a) *In general.* The accused shall be brought to trial within 120 days after the earlier of:

(1) Notice to the accused of preferral of charges under R.C.M. 308; or

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4)....

....

(b) *Accountability.*

(1) *In general.* The date on which the accused is notified of the preferral of charges or the date on which pretrial restraint is imposed shall not count for purpose of computing the time under subsection (a) of this rule. The date on which the accused is brought to trial shall count.

(2) *Inception.* If charges are dismissed, if a mistrial is granted, or—when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted.

....

(4) *Multiple charges.* When charges are preferred at different times, the inception for each shall be determined from the date on which the accused was notified of preferral or on which restraint was imposed on the basis of that offense.

(c) Exclusions. The following periods shall be excluded when determining whether the period in subsection (a) of this rule has run—

....

(3) Any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense.

....

(d) *Arrest or confinement.* When the accused is in pretrial arrest or confinement under R.C.M. 304 or 305, immediate steps shall be taken to bring the accused to trial. No accused shall be held in pretrial arrest or confinement in excess of 90 days for the same or related charges. Except for any periods under subsection (c)(7) of this rule, the periods described in subsection (c) of this rule shall be excluded for the purpose of computing when 90 days has run. The military judge may, upon a showing of extraordinary circumstances, extend the period by 10 days.

....

(e) *Remedy.* Failure to comply with this rule shall result in dismissal of the af-

fected charges upon timely motion by the accused.

## III

*Specifications 1 through 5 and 9 of Charge I and Specification 2 of Charge II*

We find that the 90–day speedy trial clock of R.C.M. 707(d) and *United States v. Burton*, 44 C.M.R. 166, started no later than 28 February 1986 for Specifications 1 thru 5 and Specification 9 of Charge I and Specification 2 of Charge II because pretrial confinement was, in effect, imposed on the basis of those offenses no later than that date. Delay is chargeable to the Government when the suspect or accused is confined in connection with the particular charge sought to be dismissed. *See United States v. Johnson*, 23 U.S.C.M. A. 91, 92, 48 C.M.R. 599, 600 (1974). Under the circumstances of this case it simply strains credulity to say that the accused was not confined on the basis of these offenses, even though the investigation had not been completed. Confinement of a suspect pending investigation of suspected offenses starts the clock on those offenses even though the investigation is far from complete and substantial information on which to base the preferral of charges may not have been obtained when the suspect is initially confined. The speedy trial clock continues to run unless terminated or interrupted as provided for in R.C.M. 707 or *Burton* and its progeny. An accused in pretrial confinement is entitled to dismissal of the charges if the Government cannot bring him to trial within 90 days or, under *Burton*, demonstrate that extraordinary circumstances contributed to the delay. Normally a defense request for or consent to a delay will result in the exclusion of the period of delay for the purpose of computing when 90 days has run. *See* R.C.M. 707(d) and (c)(3); *United States v. Driver*, 43 C.M.R. 376. Under the circumstances of this case, however, the defense request for a continuance in the court-martial trial of charges upon which the accused had been arraigned did not stop the 90–day clock from running with respect to those of-

fenses that were not then before the court-martial—offenses for which the accused had been placed in pretrial confinement but of which the military judge was apparently unaware and upon which the Government was proceeding separately. Where there are multiple specifications and charges preferred at different times the proceedings as to each must be considered separately. *United States v. Talavera*, 8 M.J. 14 (C.M. A.1979). In the instant case, the pretrial confinement chargeable to the Government in connection with Specifications 1 thru 5 and Specification 9 of Charge I and Specification 2 of Charge II had already exceeded 90 days when, on 30 May 1986, the accused was convicted of other charges and, in effect, released from pretrial confinement as a result of his change in status from pretrial confinee to sentenced prisoner.

The *Burton* speedy trial rule and R.C.M. 707(d) were violated. The Government did not demonstrate that extraordinary circumstances contributed to the delay. Therefore, the accused is entitled to dismissal of these specifications because he was denied a speedy trial under these rules.

## IV

*Specifications 6, 10, and 11 of Charge I*

With regard to Specifications 6, 10, and 11 of Charge I, R.C.M. 707(d) must be distinguished from 707(a).

If a person suspected of one offense is placed in pretrial confinement pending investigation of that offense, the R.C.M. 707(d) clock starts with respect to that offense when he is confined, while the 707(a) clock does not start to run on other offenses for which he has not been confined. If he is not confined for those other offenses, the 707(d) clock will never start. The 707(a) clock will start when he is notified of the preferral of charges involving those offenses. Additionally, to the extent that R.C.M. 707 has not superseded the speedy trial rule of *United States v. Burton, supra*, the *Burton* speedy trial clock may start on the later offenses when the Government had in its possession substantial information on which to base preferral

of those charges. *United States v. Talavera, supra. See United States v. Harvey,* 23 M.J. 280 (R.C.M. 707 was not intended to overrule *Burton* ).

▪ We find that the accused was never confined on the basis of or in connection with Specifications 6, 10, and 11 of Charge I. Therefore, the 707(d) clock never started on these specifications. Accordingly the accused was not denied a speedy trial under R.C.M. 707(d). Assuming, without deciding, that the *Burton* speedy trial clock started with respect to these offenses when the Government had sufficient information in its possession on which to base the preferral of charges, this occurred long after the accused was initially confined and the clock stopped when the accused was released from pretrial confinement and reconfined as a sentenced prisoner on 30 May 1986, the date of his first trial. He was not placed in pretrial confinement again. Therefore, the *Burton* clock never restarted. Pretrial confinement chargeable to the Government for these offenses did not exceed 90 days. Accordingly, the *Burton* speedy trial rule was not violated. His release from pretrial confinement for a significant period with no charges pending would reset the 707(a) clock at zero. *United States v. Gray,* 26 M.J. 16, 22 (C.M.A. 1988). The 707(a) clock would restart either when the charges were preferred or when the accused was notified of the preferral. Which event restarts the clock is a question left undecided in *Gray, supra,* but the answer is not germane to resolution of the speedy trial issue in the case before us because in either event the period would not have exceeded 120 days.[3] The 10 days from 30 May until 9 June 1986 is a significant period. *See United States v. Gray,* 26 M.J. 16, 22 (C.M.A.1988) (Everett, C.J., concurring in the result) ("The words 'for a

significant period' were designed to forestall use of the tactic of releasing an accused for a few hours or a day and then reconfining him and claiming that the 120-day clock must be started anew.") Since the period chargeable to the Government did not exceed 120 days, R.C.M. 707(a) was not violated.

▪ Having found the presumptions of denial of speedy trial created by case law and the Manual speedy trial provisions inapplicable, we must address the statutory and constitutional provisions. Inasmuch as the accused was never placed in pretrial restraint in connection with these specifications, he cannot claim that he was denied his right to a speedy trial under Article 10, UCMJ. *United States v. Nelson,* 5 M.J. 189. Under the circumstances of this case, lack of concern for expeditious prosecution or failure to exercise "ordinary expedition" does not constitute denial of a speedy trial. *United States v. Rachels,* 6 M.J. 232 (C.M.A.1979).[4] *See United States v. Nelson, supra.*

▪ Finally, we find the accused was not denied either his fifth or sixth amendment rights in this case. The delay in preferring three specifications of Charge I did not violate the accused's rights under the due process clause of the fifth amendment because it did not amount to a violation of those fundamental concepts of justice which lie at the basis of our civil and political institutions. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044. The accused was not denied his sixth amendment right to a speedy trial by reason of either the delay in preferring these charges or the delay from preferral to trial. This right is applicable only after charges have been preferred. *United States v. McGraner,* 13 M.J. at 413. A functional analysis of his speedy trial claim in the particular context of the case demonstrates no denial of

---

**3.** The accused contends that the period from notification of preferral of charges exceeds 120 days. His contention is based upon a misunderstanding of the clear holding in *United States v. Cherok,* 22 M.J. 438 (C.M.A.1986), that delay occasioned by an accused's assertion of his right under Article 35, UCMJ, to a five-day delay between service of charges and trial is not chargeable to the Government. Here the

Government was ready and willing to proceed to trial on the 120th day.

**4.** In *Rachels,* the Court criticized the Government's lack of concern where the accused could have been brought to trial nine months earlier by the exercise of "ordinary expedition," but found that the accused was not denied a speedy trial.

his sixth amendment right. The delay from preferral to trial was not inordinate. There was no pretrial incarceration based on these offenses. There is no indication that the delay impaired the accused's ability to defend himself on these charges. The accused, represented by counsel, did not demand speedy trial. Under these circumstances there was no denial of speedy trial.

## V

The accused also contends that, in effect, referral of the charges not tried at the first court-martial to the second court-martial amounted to vindictive prosecution. There is no merit to his claim. The accused is not entitled to relief by reason of the Government's failure to try all known offenses at one trial. Defense counsel did not object at the first trial. The convening authority did not abuse his discretion.

Accordingly, the findings of guilty of Specifications 1 through 5 and Specification 9 of Charge I and Specification 2 of Charge II and Charge II and the sentence are set aside. These specifications and Charge II are dismissed. The findings of guilty of Specifications 6, 10, and 11 of Charge I and Charge I are affirmed. A rehearing on sentence is authorized.

Chief Judge BYRNE and Judge COUGHLIN concur.