**Master Sergeant John W. ANDREWS,
FR 262–19–6438**

v.

**Colonel James E. HEUPEL,
Military Judge.**

**Miscellaneous Dkt. No. 89–04.**

U.S. Air Force Court of Military Review.

30 Oct. 1989.

---

Counsel for petitioner: Colonel Richard F. O'Hair and Major Thomas G. Becker.

Counsel for respondent: Colonel Joe R. Lamport, Major Terry M. Petrie and Captain David G. Nix.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

## DECISION

FORAY, Senior Judge:

Petitioner asks this Court to grant his petition for an extraordinary writ in the nature of mandamus directing the respondent military judge to dismiss all charges against him because his right to a speedy trial has been violated.[1]

## FACTS

On 20 October 1988, petitioner, assigned to a unit located at Hickam Air Force Base, Hawaii, was in an authorized leave status in the Republic of the Philippines (RP). On that date he was apprehended by agents of the Air Force Office of Special Investigations as a suspect in a number of drug related offenses. Also on that day, petitioner was ordered into pretrial confinement at Clark Air Base, RP, where he remained confined until 23 October. On 23 October, he was returned to Hickam Air Force Base by military aircraft arriving there that same day. Upon arrival, petitioner's immediate commander issued him a series of orders. One of the orders re-

---

1. On 27 June 1989, charges against appellant were referred to trial by general court-martial alleging one offense of wrongfully importing marijuana into the customs territory of the United States; two offenses of conspiring to import marijuana into the customs territory of the United States; and one offense of attempting to import marijuana into the customs territory of the United States, in violation of Articles 112a, 81, and 80, 10 U.S.C. §§ 912a, 881, 880, respectively.

stricted[2] petitioner to the limits of the Hickam Air Force Base, however, he would be allowed to leave the confines of the base provided he was with an authorized escort.[3] Another of the orders required petitioner to periodically telephone his unit when not performing duties. Petitioner's commander further advised him that designated members of the unit would randomly call him at his on-base quarters during non-duty hours to determine his presence. The commander did not immediately designate anyone to make any of these calls and later determined not to do so, however, this later determination was not communicated to the petitioner.

According to the commander, these orders were given to petitioner as a result of his apprehension for drug related offenses while in the Philippines and because of the likelihood that the offenses would be disposed of by a court-martial. Further, according to the commander, the restriction was to deter petitioner from fleeing and becoming involved in other misconduct pending trial by court-martial. The commander had issued the orders to petitioner without the benefit of any consultation with judge advocate personnel and without any appreciation for the impact his orders had on petitioner's speedy trial guarantees.[4]

Petitioner's commander considered his order restraining petitioner to have terminated on 24 May 1989, the day petitioner departed Hickam Air Force Base for temporary duty at Clark Air Base. The purpose of petitioner's temporary duty was to have charges preferred against him; investigated pursuant to Article 32, UCMJ; referred to trial; and ultimately tried by general court-martial regarding the offenses for which he had been apprehended on 20 October. Petitioner also understood that,

as of 24 May, the pretrial restraint previously imposed was no longer in effect.

On 1 June, petitioner, through his counsel, submitted a letter to the "Clark AB SJA office" demanding a "speedy preferral of charges" which, apparently for the first time, apprised the addressee of petitioner's continued pretrial restraint beginning 20 October 1988 and ending 24 May 1989. As a result of this belated awareness of petitioner's pretrial restraint status, a representative of the Hickam Air Force Base office of the staff judge advocate contacted petitioner's commander to advise him to effect the release of petitioner formally from any pretrial restraint he had imposed. Petitioner's commander did so by contacting petitioner's counsel at Clark Air Base to inform him of petitioner's release therefrom.

The charges against petitioner were preferred on 8 June, referred to trial by general court-martial on 27 June, and trial of the charges commenced on 9 August 1989. At the outset of trial petitioner moved, in writing, before the military judge for a dismissal of all the charges against him based upon a lack of speedy trial. *See* Article 10, UCMJ, 10 U.S.C. § 810; R.C.M. 707. Petitioner identified three issues in his motion:

1. Whether [petitioner's commander's] orders constituted "pretrial restraint," or were for some other proper administrative purpose unrelated to the judicial process;

2. Whether the orders constituted "restriction in lieu of arrest" (which would continue the speedy trial "clock" running) or merely "conditions on liberty" (which have no speedy trial significance); and

3. If the government were otherwise accountable for the entire 20 October 1988—24 May 1989 period, whether the period between release from restraint (24

---

**2.** At the trial, petitioner's commander referred to the pretrial restraint which he imposed on petitioner as "confinement."

**3.** During the entire period the restriction to base was in effect, petitioner was allowed to depart the base with an authorized escort nineteen times. On approximately two occasions petitioner was allowed to leave the base unescorted

in order to seek medical treatment at Tripler Army Medical Center.

**4.** Petitioner's commander was a Lieutenant Colonel with seventeen years of Air Force service who was exercising his first command. The command consisted of seven military members.

May 1989) and preferral of charges (8 June 1989) constitutes a "significant period" under R.C.M. 707(b)(2) and operates to "reset" the "clock" to 8 June 1989.

In answer to petitioner's motion to dismiss, trial counsel submitted a written response in which he argued that the only issue before the military judge was whether the pretrial restraint imposed upon petitioner was "conditions on liberty" or "restriction in lieu of arrest." He contended that the restraint in this case was the former and that a significant period elapsed since 23 October 1988, when petitioner was released from pretrial confinement, and 8 June 1989, when charges were preferred, therefore, the speedy trial clock was reset.

After receiving evidence and hearing the argument of counsel concerning the motion to dismiss, the respondent military judge made findings of fact and conclusions of law with respect to it. A summary of those conclusions pertinent to our inquiry are:

1. Petitioner was in pretrial confinement at Clark Air Base, RP, from 20 October to 23 October 1988, and the speedy trial clock began to run on 20 October 1988.

2. The "confinement" of petitioner to Hickam Air Force Base from 23 October 1988 to 24 May 1989, was restriction in lieu of arrest in accordance with R.C.M. 304(a)(2), and continued the running of the speedy trial clock.

3. The restriction in lieu of arrest arose directly from petitioner's apprehension at Clark Air Base for drug smuggling activities and was imposed by petitioner's commander to insure his presence during the investigation, to deter him from fleeing, and to prevent him from committing "possible subsequent misconduct."

4. Petitioner was released from the pretrial restraint on 24 May 1989, 212 days after it commenced, when he departed Hickam Air Force Base for Clark Air Base for preferral of charges and an Article 32, UCMJ, investigation.

5. R.C.M. 707(b)(2) provides that "when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted." Since no charges were pending against petitioner from the date of his release from pretrial restraint on 24 May, until 8 June, 1989, when charges were preferred against him, the speedy trial clock was, therefor, reset to zero.

Respondent denied petitioner's motion for dismissal based upon lack of speedy trial recognizing that the result of his ruling may appear "a bit incongruous when the 120 days previously had run." He further stated he could find no authority to reach a contrary result. Respondent then granted petitioner's request for a continuance in order to submit a petition for an extraordinary writ in the nature of mandamus to this Court.

## JURISDICTION

■ In the Federal judicial system, the authority of a superior court to grant extraordinary relief from a ruling or judgement of a subordinate court has generally been founded upon the All Writs Act, 28 U.S.C. 1651(a). The Act authorizes "all courts established by ... Congress" to issue "writs necessary or appropriate in aid of their respective jurisdictions." The Courts of Military Review are courts created by Congress, pursuant to Article 66, UCMJ, 10 U.S.C. § 866, to perform appellate functions and, therefore, also authorized to grant extraordinary relief pursuant to the All Writs Act. *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *Pearson v. Bloss,* 28 M.J. 764 (A.F.C.M.R.1989); *United States v. Mahoney,* 24 M.J. 911 (A.F.C.M.R.1987). *See McPhail v. United States,* 1 M.J. 457 (C.M.A.1976).

We must first consider whether the relief petitioner seeks and to which he may be entitled has to await the review of his case on direct appeal as not every case is suitable for consideration by an appellate court upon a petition for extraordinary relief.

■ The issuance of an extraordinary writ is a drastic remedy which should only be invoked in those situations which are

truly extraordinary. An extraordinary writ is not to be a substitute for an appeal even though hardship may ensue from delay and perhaps an unnecessary trial; and "whatever may be done without a writ may not be done with it." *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Traditionally, extraordinary writs have been used in aid of appellate jurisdiction at common law and in the federal court system "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so". *Bankers Life & Casualty Co. v. Holland, supra; Ex Parte Fahey,* 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). The courts have never limited themselves to an arbitrary and technical definition of jurisdiction, but have made it "clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *De Beers Consol. Mines Ltd. v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

In this regard, the Court of Military Appeals, in *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983), stated:

> Thus, in *United States v. LaBella,* 15 M.J. 228 (C.M.A.1983), ... [w]e noted that such "a drastic remedy.... should be invoked only in truly extraordinary situations," and we pointed out that "[t]o justify reversal of a discretionary decision by mandamus, the judicial decision must amount to more than even 'gross error'; it must amount 'to a judicial "usurpation of power," ' *United States v. DiStefano,* 464 F.2d 845, 850 (2d Cir. 1972), or be "characteristic of an erroneous practice which is likely to recur.' " *Id.* at 229.

On the other hand, we have not hesitated to consider a petition on the merits when a truly extraordinary situation existed. For example, in *Wickham v Hall,* 12 M.J. 145 (C.M.A.1981), a majority of the Court considered on the merits the petition for extraordinary relief of an accused who claimed that her receipt of a discharge precluded her trial by court-martial for alleged fraud in procuring that discharge. In *Cooke v. Orser,* 12 M.J. 335 (C.M.A 1982), we granted extraordinary relief to a petitioner who claimed that his trial was barred by a promise of immunity. Of course, like the petitioners in *Wickham* and *Cooke,* Murray claims that the court-martial is precluded from trying him at all for the offense with which he is charged.

The Supreme Court has allowed bypassing ordinary procedures for review within the military justice system when accused persons have "raised substantial arguments denying the right of the military to try them at all". *Noyd v. Bond,* 395 U.S. 683[, 89 S.Ct. 1876, 23 L.Ed.2d 631] ... (1969).

Here, we find that the issue raised by petitioner concerns a ruling made by the military judge which has the "characteristic of an erroneous practice likely to recur." Additionally, petitioner has raised a substantial argument denying the right of the military to try him at all. Thus, the normal procedures for appellate review within the military justice system may be bypassed. *United States v. Caputo,* 18 M.J. 259 (C.M.A.1984); *Murray v. Haldeman, supra,* and cases cited therein. Accordingly, we will proceed to determine the merits of petitioner's claim.

### SPEEDY TRIAL

Pursuant to R.C.M. 707(a), an accused shall be brought to trial within 120 days of

(1) Notice to the accused of preferral of charges under R.C.M. 308; or

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4); or

(3) Entry on active duty under R.C.M. 204.

One of the restraints which would trigger the running of the speedy trial clock under R.C.M. 707(a)(2), is restriction in lieu of arrest which is defined in R.C.M. 304(a)(2), as "the restraint of a person by oral or written orders directing him to remain

within certain specified limits; ...." A failure to comply with the speedy trial rule shall result in the dismissal of the affected charges upon timely motion by the accused. R.C.M. 707(e).

According to R.C.M. 707(b)(2):

If charges are dismissed, if a mistrial is granted, or—when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted.

Key to our determination of the question before us is the applicability of that part of R.C.M. 707(b)(2), which states that "when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date the charges or restraint are reinstituted."

The three conditions set forth in R.C.M. 707(b)(2)—dismissal, mistrial, and release from pretrial restraint—all contemplate that the accused is no longer facing charges. In the case of release from pretrial restraint it is also contemplated that the accused will be returned to his full time assigned duties and have the same rights which are afforded to all other service members. *United States v. Britton*, 26 M.J. 24 (C.M.A.1988); *United States v. Mickla*, 29 M.J. 749 (A.F.C.M.R.1989). Here, of course, we are concerned only with the effect that petitioner's release from pretrial restraint had on the inception of the requirement for speedy trial accountability on the part of the Government.

## CONCLUSION

◼ We agree with respondent that sufficient evidence exists to support the conclusion that the 212 days petitioner was restrained prior to trial constituted pretrial confinement (from 20 to 23 October 1988) and later restriction in lieu of arrest (from 23 October 1988 to 24 May 1989) as defined in R.C.M. 304(2) and 304(4), and, as a result, the speedy trial clock began to run on 21 October 1988, the day after petitioner

was ordered into pretrial confinement. *See* R.C.M. 707(b)(1). In our view, since more than 120 days elapsed from the date the pretrial restraint began, triggering the speedy trial clock, and petitioner had not been brought to trial, the clear mandates of R.C.M. 707(a)(2) and 707(e), require the charges to be dismissed.

◼ We find that the respondent incorrectly applied the provisions of R.C.M. 707(b)(2), when he concluded that petitioner's release from pretrial restraint was for a significant period thereby tolling the running of the speedy trial clock. We believe the provisions of that Rule only contemplate a situation wherein an accused has been released from pretrial restraint before R.C.M. 707(a)(2), has been violated. To hold, as did respondent here, that the Rule is applicable even if an accused has already been denied a speedy trial would sanction violations of an accused's speedy trial rights under the sixth amendment and Article 10 and discourage protection of command and societal interests in the prompt administration of justice. M.C.M., 1984, App. 21, Rule 707.

◼ Assuming, *arguendo*, respondent was correct in his premise that R.C.M. 707(b)(2), would apply in a situation where the speedy trial clock had already run, we would hold that premise not to be applicable here. When petitioner was released from pretrial restraint on 24 May 1989, formal charges had not yet been preferred against him. However, on that date he had just arrived at Clark Air Base, distant from his home base and family, pursuant to temporary duty orders for approximately sixty days in order for charges to be preferred against him; investigated under Article 32, UCMJ; and referred to trial by a general court-martial. Under these circumstances, it could hardly be said that when petitioner was released from pretrial restraint that he was not facing charges and had been returned to his regular full time duty having all the rights that other service members are accorded.[5] *United States v. Britton; United States v. Mickla, both supra.*

5. Item 16, of the Remarks section of DD Form  1610, Request And Authorization For TDY Trav-

We are mindful of Judge Sullivan's construction of R.C.M. 707, in *United States v. Gray*, 26 M.J. 16 (C.M.A.1988). There, he stated that "in view of our past precedent, charges are pending in the military justice system when charges are preferred." *See* R.C.M. 307(b). In *Gray*, the accused was placed in pretrial confinement for 29 days. No charges had been preferred against him either prior to or during his confinement. Charges were preferred against him approximately 34 days after his release from confinement. The accused was never reconfined pending trial and a total of more than 120 days expired between the date of accused's pretrial confinement and date of his trial. As a result, a lack of speedy trial issue was litigated at trial. According to Judge Sullivan:

> In the present case, charges were not preferred against appellant prior to his arrest. Moreover, charges were not formally preferred against him during his 29 days of pretrial confinement. Accordingly, formal charges were not pending against him during his incarceration, *and this pretrial restraint* did not start the speedy trial clock of R.C.M. 707(a). (Emphasis supplied.)

(Citations omitted.)

Judge Sullivan's view of R.C.M. 707, was not joined in by the other members of the Court, although, they concurred in the result.[6] In his concurring opinion, Chief Judge Everett read the language of R.C.M. 707(a), as entitling an accused who is confined prior to trial "to the benefit of the 120–day limit, whether he receives notice of preferral of charges." He goes on to say that:

> Otherwise, the Government could avoid the operation of R.C.M. 707(a) by placing an accused in pretrial restraint and then failing to either prefer charges against him or to notify him that charges had been preferred.

In this case, we adopt the view of Chief Judge Everett in *Gray*, and find that petitioner is entitled to the benefit of the 120–day time limit accorded him by R.C.M. 707(a), even though no charges had been preferred against him during that period of time. As a result, he was entitled to the relief demanded by him at trial pursuant to R.C.M. 707(e)—dismissal of the charges against him. Therefore, we find the military judge erred to the substantial prejudice of petitioner by denying his motion for dismissal based upon lack of speedy trial. Petitioner should not be tried by court-martial and, therefore, need not await the resolution of this issue on appeal. *United States v. Caputo; Murray v. Haldeman; Cooke v. Orser; Wickham v. Hall, all supra.* Accordingly, the extraordinary relief sought by petitioner is granted. The record of trial is returned to the respondent military judge who is directed to forthwith dismiss the charges and specifications.

Judges LEONARD and MURDOCK, concur.

---

el OF DOD Personnel, dated 23 May 1989, temporarily assigning petitioner to Clark Air Base, contained the statement: "Travel in connection with disciplinary action, member is not entitled to per diem and allowances. (IAW JFTR Vol 1, Part O, Para U7450)."

6. Judge Sullivan, nonetheless, would affirm the finding of the court below in rejecting appellant's speedy trial claim accepting that court's conclusion that appellant had been released from pretrial confinement "for a significant period" of time as defined in R.C.M. 707(b)(2).