## UNITED STATES

v.

**Curtis ROBERTSON, 254 92 8427 Fireman Recruit (E–1), U.S. Navy.**

**NMCM 85 2046.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 8 March 1985.

Decided 22 Nov. 1985.

MAJ MICHAEL E. CANODE, USMC, JAGC, USNR, MAJ MICHAEL E. CANODE, USMC, Appellate Defense Counsel.

LCDR DAVID T. PATTERSON, JAGC, USNR–R, Appellate Defense Counsel.

LT ROBERT G. SOSNOWSKI, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

GRANT, Judge:

Appellant was arraigned at a special court-martial on charges involving two specifications of unauthorized absence, from 7 May 1978 to 27 November 1978 and 16 March 1979 to 5 June 1979 (Charge and Additional Charge I, respectively), and two specifications of desertion, from 18 July 1979 to 29 May 1984 and 11 June 1984 to 23 January 1985 (Additional Charges II and III, respectively). Appellant moved for dismissal of all charges on grounds that the court-martial lacked personal jurisdiction, by virtue of recruiter misconduct which occurred at the time of his enlistment. The trial judge granted the motion to dismiss the Charge and Additional Charges I and II, but declined to dismiss Additional Charge III, on grounds that Article 2(b), Uniform Code of Military Justice (UCMJ), effective 9 November 1979, operated to provide personal jurisdiction over the appellant in regard to Additional Charge III, which offense occurred after the effective date of the amending legislation. Appellant assigned as error the trial judge's prospective application of Article 2(b) to the facts of this case, as well as his determination that a constructive enlistment was effected by appellant after his return to military control on 29 May 1984, in accordance with Article 2(c), in denying appellant's mo-

tion to dismiss Additional Charge III for lack of personal jurisdiction. We will address only those considerations applicable to Article 2(b) in regard to Additional Charge III, as we believe the amending legislation is dispositive of the jurisdictional assignment of error before this Court.

## SUMMARY OF EVIDENCE

The appellant enlisted in the Naval Service on 7 June 1977, but failed to reveal on his enlistment application his prior enlistment in the U.S. Coast Guard and discharge with a reenlistment code, RE–4. The appellant advised the recruiter of his prior enlistment, but the recruiter was not interested in pursuing the matter which constituted a nonwaivable bar to reenlistment under then existing Naval regulations, and took no action to alert higher authorities of the appellant's prior reenlistment code. Appellant otherwise executed a valid enlistment contract and took the oath of enlistment. Soon after he entered upon active duty, he embarked upon the misconduct which resulted in his court-martial and ultimate conviction of Additional Charge III. Appellant surrendered to military authorities, on 29 May 1984, to terminate the period of desertion alleged in Additional Charge II, and thereafter submitted to military control, obeyed the lawful orders of his superiors, lived in the barracks, took meals at the mess hall, performed military duties as assigned, and although pay was apparently credited to his pay records, appellant did not actually receive pay subsequent to his return. Appellant pleaded guilty to Additional Charge III after unsuccessfully petitioning the trial judge to dismiss the Charge based upon lack of personal jurisdiction, and was sentenced to a bad conduct discharge, confinement for 39 days, and forfeiture of $410.00 pay per month for two months, which sentence the convening authority approved.

## I

In *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), the United States Court of Military Appeals determined that a court-martial does not have personal jurisdiction where the accused's enlistment was effected through the fraudulent assistance of the recruiter, although the enlistment was otherwise voluntary. Congressional legislation[1] amending Article 2, UCMJ, 10 U.S.C. § 802, effective 9 November 1979, was intended by Congress and Department of Defense proponents to be fully retroactive and to correct supposedly "aberrant judicial interpretations of legislative intent" that Congress had "entertained all along," thereby negating the effects of *Russo* and its progeny. See the legislative history of the amending legislation set forth in *United States v. McDonagh*, 14 M.J. 415 (C.M.A.1983).

The *McDonagh* Court, however, declined to fully apply the legislation retroactively, on grounds that it would unfairly punish service personnel committing purely military offenses for actions which were lawful at the time they occurred, citing the Constitution, Article I, § 9, that "No Bill of Attainder or *ex post facto* Law shall be passed," and Article I, § 10, that States are prohibited from passing "any ... *ex post facto* Law." The *McDonagh* Court reasoned that purely military offenses require proof beyond a reasonable doubt of the military status of the offender which in turn involves proof that the enlistment process was not tainted by recruiter fraud. To retroactively eliminate the recruiter's fraud as part of the proof would unfairly punish the service person for purely military offenses that would otherwise not be punishable at the time they occurred because of past judicial interpretation of Article 2, UCMJ. The same rationale, accord-

1. Act of November 9, 1979, Pub.L. No. 96–107, § 801, 93 Stat. 810, in pertinent part adds the following language to the end of Article 2, UCMJ, 10 U.S.C. § 802:

(b) The voluntary enlistment of any person who has the capacity to understand the signif-

icance of enlisting in the armed forces shall be valid for purposes of jurisdiction under subsection (a) of this section and a change of status from civilian to member of the armed forces shall be effective upon the taking of the oath of enlistment.

ing to the *McDonagh* Court, does not apply to other offenses not peculiarly military where military status is not an element of proof, and therefore, the retroactive application of the amending legislation does not work to the disadvantage of an accused.

The *McDonagh* Court, however, addressed only the retroactive application of the amending legislation to offenses which occurred prior to the effective date of the legislation, not to prospective offenses where the enlistment process was effected before the legislation was enacted. We frame the issue before this Court as whether Article 2(b) retroactively expunges recruiter fraud and validates an otherwise voluntary enlistment entered into before the effective date of the legislation for purposes of prospectively retaining personal jurisdiction over offenses of a purely military nature committed by the appellant after the legislation was enacted.

The *McDonagh* Court applies the amending legislation retroactively insofar as it is constitutionally defensible, which involves a careful analysis of constitutional *ex post facto* limitations, and determines such limitations "to be directed toward situations where someone may have acted in a certain way because he was not on notice that his conduct was unlawful." (*See McDonagh*, at page 423.) It follows that *McDonagh* would apply the amending legislation prospectively to those entering military service prior to 9 November 1979, subject to the same considerations. As military status is not an element of proof in prospective offenses not peculiarly military in nature, the *McDonagh* rationale would retain personal jurisdiction. In regard to prospective and purely military offenses, an accused is on notice that the amending legislation was intended to and did eliminate the effects of *Russo* and its progeny, and therefore, any claim of unfairness based upon *ex post facto* limitations, as defined in *McDonagh*, is unfounded.

Accordingly, as there are no *ex post facto* limitations in applying Article 2(b) prospectively under the facts of this case, and the circumstances surrounding the appellant's enlistment demonstrate that he had the capacity to understand the significance of his enlistment, that he took the oath of enlistment, and otherwise voluntarily enlisted in the Naval Service, we conclude that the trial judge correctly denied appellant's motion to dismiss Additional Charge III for lack of personal jurisdiction.

The findings of guilty and sentence as approved on review below are affirmed.

Senior Judge KERCHEVAL and Judge RAPP concur.