**UNITED STATES, Appellant,**

**v.**

**Lieutenant Colonel Michael C. CALLI-NAN, Military Judge, Appellee,**

**Senior Airman Steven F. Marks, Jr., Real Party in Interest.**

**Misc. Dkt. No. 90A–06.**

U.S. Air Force Court of Military Review.

8 Feb. 1991.

Major Brenda J. Hollis and Captain Thomas E. Wand for the Appellant.

Lieutenant Colonel Jeffrey R. Owens and Captain Michael D. Burt for the Appellee.

Before MURDOCK, KASTL AND O'HAIR, Senior Judges and MILLS, Judge.

## OPINION OF THE COURT

MURDOCK, Senior Judge:

This is an appeal by the government under Article 62, UCMJ, 10 U.S.C. § 862. At the first session of his court-martial, Senior Airman Marks moved for dismissal of all charges based on a denial of speedy trial, citing R.C.M. 707. The military judge granted the motion and the government appealed. We hold that the military judge erred and grant the government appeal.

As usual with appeals based on speedy trial issues, we must set out a rather detailed chronology:

17 Dec 88—

3 Jan 90 Alleged offenses occurred

5 Feb 90 Marks verbally restricted to base by base commander, removed from normal duty, ordered to avoid from normal duty, ordered to avoid normal duty location or to see victim or her family.

1 Apr 90 Base commander lifted restriction, but continued order to avoid duty location, and victim or her family.

8 Jun 90 Charges preferred. Defense delay requested to obtain civilian attorney.

13 Jul 90 Charges referred.

15 Jul 90 Charges served on accused.

25 Jul 90 Original trial date.

24 Sep 90 Article 39(a), UCMJ session held and motion to dismiss granted.

The judge found that after deducting 21 days for defense delay, 139 days had elapsed between imposition of restraint and the original trial date. He further found that all the time from the original trial date until the date of the initial Article 39(a), UCMJ session was defense delay.

Speedy trial issues are governed by R.C.M. 707. It states that an "accused shall be brought to trial within 120 days after the earlier of [preferral of charges]; imposition of restraint under R.C.M. 304(a)(2)–(4); or [entry on active duty]." Of the three possible triggers for R.C.M. 707 consideration, the one that applies to this case is imposing restraint under R.C.M. 304. R.C.M. 707(a)(2). Both sides agree that the speedy trial clock began to run when the base commander restricted Marks to the base. The disagreement is over whether the clock ever stopped.

The speedy trial clock can be stopped or restarted under certain conditions. These conditions are: when charges are dismissed, if a mistrial is granted, or "when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstated." R.C.M. 707(b)(2).

The only provision which might stop the clock in this case is the one which applies when an accused is released from pretrial restraint for a significant period of time. In their briefs, the parties emphasize different portions of R.C.M. 707. The government asserts that the accused was released from pretrial restraint on 1 April 1990 and, thus, a *significant* period of time expired

before charges were preferred on 8 June. On the other hand, the defense argues that the accused was never *released* from pretrial restraint at all. Our holding does not rely on either interpretation. Instead, we hold that Marks was released for R.C.M. 707 purposes when the base commander lifted the restriction on 1 April.

The defense moved for dismissal at the first Article 39(a), UCMJ, session, based on the restraint which began on 5 February 1990. Counsel argued that lifting the restriction did not stop the R.C.M. 707 clock because conditions on liberty were continued with no break.

We have accepted the trial judge's characterization of the time from 5 February 1990 until 1 April 1990 as restriction and the remainder of the time as a condition on liberty. Ordinarily, a condition on liberty does not trigger speedy trial considerations. R.C.M. 304(a)(1) and 707(a)(2).

In *United States v. Britton*, 26 M.J. 24 (C.M.A.1988), the Court of Military Appeals stated a rule which has been at the center of R.C.M. 707 analysis ever since:

> There are substantial differences between the three conditions listed in R.C.M. 707(b)(2) (dismissal, mistrial, release from pretrial confinement) and withdrawal of charges. Dismissal, mistrial, and a *break in pretrial restraint all contemplate that the accused no longer faces charges, that conditions on liberty and pretrial restraint are lifted, and that he is returned to full-time duty with full rights as accorded to all other servicemembers.*

26 M.J. at 26 (emphasis added).

Returning a servicemember to full duty served as the basis for our court's finding that R.C.M. 707 had been violated in *Andrews v. Heupel*, 29 M.J. 743 (A.F.C.M.R. 1989), and in *United States v. Mickla*, 29 M.J. 749 (A.F.C.M.R.1989). However, the circumstances in these cases were substantially different from the present case.

Conditions on liberty were listed as a speedy trial trigger event when R.C.M. 707 first became effective and it was an authorized trigger event during Britton's courtmartial. Conditions on liberty were removed as speedy trial triggers by the February 1986 amendment to the Military Justice Act. As such, it is likely the Court of Military Appeals would not have included the phrase "conditions on liberty" in their discussion of when the speedy trial clock if *Britton* had been based on facts which occurred after February 1986.

It could be argued that even though conditions on liberty are no longer a triggering event, a literal reading of *Britton* would compel us to hold that lifting the restriction did not stop the R.C.M. 707 clock in Marks' case because he was not returned to his prior duty assignment.

While that argument has some appeal, we doubt the Court of Military Appeals had Marks' situation in mind when they wrote *Britton*. First, conditions on liberty are no longer a speedy trial trigger, and therefore probably should not be a factor in when the clock stops. Second, if we were to follow this logic, every person who has been subjected to a R.C.M. 707 triggering event would have to be reinstated in his/her precise job they had before the event in order to stop the clock. Such an interpretation would place an unnecessary and potentially undesirable limitation on military commanders' ability to assign their subordinates to appropriate duties.

Often considerations such as special access programs, access to classified information, or the sensitive relationship of the duties and the alleged offense convince commanders that they should remove accused persons from their prior duties pending investigation or trial, even where they see no need to order a R.C.M. 707 triggering event. If we were to read *Britton* to require a mindless reassignment to a servicemember's prior duties, we would either jeopardize the activities and people that the previously mentioned special considerations should protect, or we might force non-prosecution or unprepared prosecution of those difficult cases which take longer than 120 days to prepare. We do not view either alternative as acceptable.

We consider that the return to full-time duties contemplated in *Britton* is satisfied

in this case. Marks was performing legitimate military duties for a usual period of time during the day or week. The limitations that remained on Marks strike us as ordinary and reasonable under the circumstances. He was accused of having committed serious offenses against the wife of a co-worker. Ordering him to stay away from the victim, and away from the fire station where he might be forced to work side-by-side with the victim's husband, seem more like common sense preventive measures than legally significant restraints under R.C.M. 707. These measures seem to have been carefully designed to protect the victim and the tranquility of the workplace and housing area. They were reasonable under the circumstances. What we feel might not be acceptable under *Britton* is when a servicemember is ordered to stay away from the office until further notice and is given no other assignment. That person might be viewed as not having returned to his full-time military duties.

Having reached this conclusion, we hold that the R.C.M. 707 clock stopped when the commander lifted Marks' restriction even though he left some conditions on liberty intact.

We hold that the military judge erred when he granted the motion to dismiss. The government's appeal of the military judge's ruling is granted. The charges and specifications are reinstated and the record of trial is returned to The Judge Advocate General.

Senior Judges KASTL and O'HAIR, and Judge MILLS concur.