**UNITED STATES, Appellee,**

v.

**Private Roy L. REYNOLDS, II, 451–73–
7855, United States Army, Appellant.**

**ACMR 9102327.**

U.S. Army Court of Military Review.

25 March 1993.

For Appellant: Captain David L. Thomas, JAGC (argued), Major Fran W. Walterhouse, JAGC (on brief).

For Appellee: Major Donna L. Barlett, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Captain Richard O.I. Brown, JAGC, Captain Samuel A. Smith, Jr., JAGC (on brief).

Before De GIULIO, BAKER, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

WALCZAK, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Frankfurt, Germany. Contrary to his pleas, he was convicted of violating a general regulation by wrongfully carrying a concealed weapon, a lockblade knife, in violation of Article 92, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 892. The court-martial sentenced the appellant to a bad-conduct discharge, and the convening authority approved the sentence.

### I.

#### Speedy Trial

Appellant first argues that he was denied his right to a speedy trial under the Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 707. He asserts that the government intentionally manipulated speedy trial accountability so as to bring appellant to trial in excess of the 120 days mandated by R.C.M. 707(a). We disagree.

At trial, the defense moved for dismissal of the charges for denial of speedy trial. The military judge heard evidence on the issue and made specific findings on these periods. The military judge found that appellant was first placed in restriction tantamount to confinement from 29 March to 8 April 1991, then under restriction not equivalent to confinement from 9 April to 10 May 1991, then subject to conditions on liberty from 10 May to 10 July 1991. Midway through this entire period, on 29 May

1991, charges were preferred. On 31 July 1991, the appellant was arraigned. The military judge found that appellant's earlier restraint ended on 10 May 1991, when appellant's status was changed from restriction to conditions on liberty, and that the period of 10 May to 29 May was a significant release from pretrial restraint under R.C.M. 707(b)(3)(B). Accordingly, he held that the 120–day speedy trial accountability under R.C.M. 707 began with preferral of the charges on 29 May, and ended with arraignment on 31 July 1991, for a total of 63 days attributable to the government. He found no R.C.M. 707 speedy trial violation.

■ Appellant contends that the government intentionally manipulated the speedy trial clock by superficially changing the conditions of appellant's restraint so that it would appear as if he had been released from restraint for a significant period of time. Appellant's argument, however, confuses conditions on liberty under R.C.M. 304(a)(1) (limits on the pass and civilian clothing privilege) with forms of restraint under R.C.M. 304(a)(2)–(4) (restriction, arrest, and confinement). The latter would constitute continuation of restraint under R.C.M. 707.

R.C.M. 707(a) requires that an accused be brought to trial within 120 days after the earlier of:

(1) Preferral of charges;

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4); or

(3) Entry on active duty under R.C.M. 204.

R.C.M. 304(a)(2)–(4) define restraint as confinement, restriction, or restriction tantamount to confinement. Conditions on liberty under R.C.M. 304(a)(1), however, do not constitute restraint for purposes of triggering the 120–day rule. Further, under R.C.M. 707(b)(3)(B), if an accused is released from pretrial restraint for a significant period, the 120–day period begins on

the earlier of the three events of R.C.M. 707(a) specified above.

In the present case, charges were not preferred against appellant prior to his restraint. R.C.M. 304. Moreover, in view of his subsequent release from restriction on 10 May, the 120–day accountability did not begin until 29 May 1991 with the formal preferral of charges. The period of 10 May to 29 May when appellant was under conditions on liberty was not a continuation of pretrial restraint under R.C.M. 707(a) and it is a significant period, under the facts of this case. Accordingly, we agree with the findings of the military judge that the 120–day speedy trial accountability imposed in R.C.M. 707 began on the date of preferral, 29 May 1991, and ended on the date of arraignment, 31 July 1991, for a total of 63 days attributable to the government.

## II.

### Factual and Legal Sufficiency

■ Appellant contends that the evidence against him is factually and legally insufficient because appellant lacked criminal intent. At trial and on appeal, he contends that he had the knife for a specifically exempted purpose, his hobby of stereo repair, and was merely travelling with the knife until he could return it to its owner. We disagree.

Appellant and another soldier were apprehended as robbery suspects by German police late at night while walking along a street in the vicinity of an earlier robbery of a German national at knife point. Incident to his apprehension, appellant was found to be carrying concealed on his person a knife with a blade in excess of three inches. Appellant was subsequently charged under Article 92, UCMJ, with violating United States Army Europe Regulation [hereinafter USAREUR Reg.] 600–1, by wrongfully possessing and carrying in a concealed manner a lock-blade knife.[1]

---

1. USAREUR Reg. 600–1 prohibits the possession of certain knives in a barracks room or in public except those for hunting, fishing, camp-

ing, or picnicking or other sports or activities where knives are commonly used if the knife is intended to be used in such activity.

Appellant maintains that his possession of the knife was innocent—he borrowed the knife from another soldier to repair the wires to his stereo. He explained that he attempted to return the knife to its owner, but the owner apparently had departed the barracks. He then placed the knife in his pocket and departed the building for the evening. While appellant's need for originally possessing the knife to splice stereo wires may explain his initial conduct, it does not explain why he felt the need later that day to carry it with him on an outing which had no such related purpose. His original reason for possessing the knife is also not a defense to violating USAREUR Reg. 600–1. The type of knife[2] and the circumstances surrounding its seizure by German police are factually inconsistent with appellant's stereo use.

■ The elements of proof for a violation of a lawful general regulation do not include a requirement that the accused must have knowingly intended to violate the regulation, or even that the offender have actual knowledge of the regulation itself. *United States v. Bruce*, 14 M.J. 254 (C.M.A.1982); *Sena v. United States*, 6 M.J. 775 (A.C.M.R.1978). Consequently, the factfinders in this case, after hearing all the evidence, could find appellant's possession of the knife a violation of USAR-EUR Reg. 600–1, even though his earlier possession of the knife was for a noncriminal purpose.

■ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of the appellant's guilt beyond a reasonable doubt. UCMJ Art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). This Court has "awesome, plenary, de novo power of review" that allows us to substitute our judgment for that of the court members. *See United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). The test for legal sufficiency is

whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). Contrary to appellant's claim, we find the evidence is both legally and factually sufficient to support his conviction for violation of a lawful general regulation.

### III.

### Instructions

■ Appellant further argues that he was substantially prejudiced by the military judge's failure to adequately instruct the court members with respect to the definition of "wrongful," as used in the specification of the charge of violating a lawful general regulation. We disagree.

Before retiring for deliberations, the president of the court-martial asked the military judge to define the word "wrongful." After much discussion with counsel, the judge defined wrongful as "done in violation of law." The judge used one exception, official duties, as an example of when possession of a prohibited item would not be a violation of USAREUR Reg. 600–1. There was no objection from either counsel to the instruction as given. Subsequently, the members found the appellant guilty as charged.

■ We do not find the definition provided the members to be plain error. While there is no fixed definition of "plain error," it must be not only obvious and substantial, but also it must seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

■ Further, even if the military judge did not give a complete definition, the defense counsel did not object to the definition as given. In the absence of plain

---

2. We have examined prosecution exhibit 4, a photograph of the lock-blade knife, and note its characteristics.

error, failure to object constitutes waiver. R.C.M. 920(f); *United States v. Smith,* 34 M.J. 200 (C.M.A.1992); *United States v. Valdez,* 35 M.J. 555, 562 (A.C.M.R.1992). Accordingly, there is no plain error, and even if error, it was waived.

## IV.

### Selection of the Court–Martial Panel

Next, appellant contends that the military judge erred to appellant's substantial prejudice in finding that the court-martial panel selection in his case was proper.

■■■■ The general court-martial convening authority selected two standing panels—one to sit as a general court-martial and the other to sit for special courts-martial authorized to adjudge bad-conduct discharges. Additionally, he selected five alternate members to sit as needed. The convening authority personally selected the court members using the standards of Article 25, UCMJ. Because the standing general court-martial panel had heard a co-accused's case, the staff judge advocate recommended to the convening authority that he detail the standing special court-martial panel authorized to adjudge bad-conduct discharges and two preselected alternate members to hear appellant's case. The convening authority followed the staff judge advocate's recommendation and detailed the court-members as advised.

At trial appellant moved for abatement of the proceedings on the basis that the court-martial was improperly convened. He further argued that the selection process was improper, as the convening authority was merely "rubber-stamping" the staff judge advocate's selection of court members. The motion was denied by the military judge, who found that the court-martial panel had been properly selected by the convening authority. We agree with the determination of the military judge.

Appellant's arguments fail because the convening authority did select those members in accordance with Article 25, UCMJ, to sit on courts-martial convened by him. There are other ways to procedurally detail members to a court-martial when there is a disqualification[3], but the one selected by the convening authority in appellant's case is proper. We also find that the staff judge advocate was merely ensuring that the panel was in the appropriate configuration to sit on appellant's case. *Cf. United States v. England,* 24 M.J. 816 (A.C.M.R. 1987) (held proper for convening authority to adopt membership of panel appointed by his predecessor.) Accordingly, we find that there is nothing improper about the staff judge advocate recommending and the convening authority detailing an already selected panel to hear appellant's case.

## V.

### Staff Judge Advocate Recommendation

■■■ Lastly, appellant contends that the staff judge advocate who testified on behalf of the government at appellant's court-martial was disqualified from preparing the post-trial recommendation. We disagree.

During appellant's trial, he challenged the procedures followed in the convening of his court-martial. The staff judge advocate testified for the government concerning his pretrial advice to the convening authority and the administrative procedures followed in the convening of appellant's court-martial. As discussed in the earlier assignment of error, the military judge found, and we agree, that the actions of the staff judge advocate in the convening of appellant's court-martial were proper. Appellant's attack on the process did not suggest improper motivation or bias on anyone's part, but rather the government's failure to follow codal and Manual procedures.

■■■ Testifying as a witness is not *per se* a statutory disqualification of the staff judge advocate to preparing the post-trial

---

3. The staff judge advocate, in accordance with Art. 25, UCMJ, could have recommended that the convening authority select a new panel to sit as a general court-martial; select more than one standing panel; or as in this case, adopt the special court-martial panel with the option of selecting any other member of his command to sit for appellant's trial.

recommendation. *See United States v. Choice*, 23 U.S.C.M.A. 329, 49 C.M.R. 663 (1975). The concern is whether an impartial recommendation can be rendered. The test for this determination is objective—whether the staff judge advocate has a personal connection with the case or only an official interest. "Disqualification turns on whether the staff judge advocate is put in the position of weighing his testimony against or in light of other evidence which conflicts with or modifies his own." *Choice*, 49 C.M.R. at 665.

The actions of the staff judge advocate in the instant case are distinguishable from those appellant cites in *United States v. Engle*, 1 M.J. 387 (C.M.A.1976). In *Engle*, the staff judge advocate testified during a defense motion to rebut a claim that he misstated the evidence and omitted mention of other matters from his pretrial advice to the convening authority. Following trial, the same staff judge advocate submitted his post-trial review where he evaluated his earlier advice saying it "was not defective" and the accused failed to show prejudice sufficient to "warrant a new Article 34 advice letter."

The trial testimony of the staff judge advocate in appellant's case was limited to his administrative acts of advising the convening authority as to the detailing of panel members to sit on the court-martial. In his post-trial recommendation he did not evaluate or comment on his courtroom testimony or the issue of the convening of the court. Additionally, the appellant in his R.C.M. 1105 and 1106 post-trial submissions to the convening authority did not claim any impropriety by the staff judge advocate in the convening of appellant's court-martial.

Having found the staff judge advocate's pretrial advice and the convening authority's adoption and detailing of his pre-approved court members to hear appellant's case were correct, we accordingly hold that the staff judge advocate was not disqualified from performing a post-trial review. *See United States v. Collins*, 6 M.J. 256 (C.M.A.1979).

We have also considered the remaining assertions of error, which we have not discussed above, and find them to be without merit.

The finding of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge BAKER concur.

