**UNITED STATES**

v.

**Jason T. RUFFIN, 072–64–1728 Aviation Electronics Technician Airman (E–3), U.S. Navy.**

**NMCM 95 01373.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 12 Sept. 1994.

Decided 19 March 1997.

LT E. Rubiella, JAGC, USNR, Appellate Defense Counsel.

MAJ R.W. Koeneke, USMC, Appellate Government Counsel.

Before DOMBROSKI, LUCAS and OLIVER, JJ.

DOMBROSKI, Chief Judge:

Tried before a general court-martial of officer and enlisted members, the appellant was charged with an attempt to murder with premeditation, conspiracy to murder with premeditation, conspiracy to commit an aggravated assault, aggravated assault, and wrongful discharge of a firearm, in violation of Articles 80, 81, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 928, and 934 (1994)[hereinafter UCMJ], respectively. The appellant pled not guilty to all charges and specifications. Following a trial on the merits, the appellant was found guilty of attempted murder by engaging in acts inherently dangerous to others, conspiracy to murder by engaging in acts inherently dangerous to others, aggravated assault with a firearm, and wrongful discharge of a firearm. The members sentenced the appellant to be confined for 5 years, total forfeitures, reduction to pay-grade E–1, and a dishonorable discharge. The convening authority disapproved the findings of guilty as to the conspiracy to murder charge and dismissed that charge. He approved the remaining findings of guilty and the sentence adjudged but suspended execution of confinement in excess of 2 years for a period of 12 months from the date of his action.

Before this court, the appellant has assigned three errors.[1] We specified an additional issue[2] and ordered briefs. We will address the first assignment of error and the specified issue. Our resolution of the specified issue renders moot the second and third assignments of error.

## Facts

This case began as a joint trial of four accused. Severance of the cases came after litigation of a speedy-trial motion. All of the charges arose out of an altercation between rival groups of Sailors which began at the enlisted club at Naval Air Station, Whidbey Island, and thereafter continued in the parking lot of a club in Oak Harbor, Washington. A firearm was discharged several times, one round hitting and lodging in the leg of a third-class petty officer. That petty officer was also severely beaten when he was down on the ground after being shot. Direct evidence established that the appellant pointed and discharged a firearm in the direction of the victim.

The military judge found the pertinent timeline facts; they were not in dispute and we adopt them as true. The offenses occurred on 27 November 1993. The appellant was placed in pretrial restriction on 10 December 1993 and afterwards released from that restriction on 15 February 1994. Charges were preferred on 16 February 1994. Thereafter, an investigation under Article 32, UCMJ, 10 U.S.C. § 832, was completed. Trial commenced with arraignment on 30 August 1994, the 195th day after pre-

---

1. I. THE MILITARY JUDGE ERRED WHEN SHE DENIED APPELLANT'S MOTION TO DISMISS FOR DENIAL OF SPEEDY TRIAL.

II. PLAIN ERROR OCCURRED DURING GOVERNMENT'S SENTENCING ARGUMENT BECAUSE TRIAL COUNSEL UNDULY EMPHASIZED THE GENERAL DETERRENT EFFECT OF APPELLANT'S SENTENCE AND BECAUSE TRIAL COUNSEL WAS IMPROPERLY ALLOWED TWO SENTENCING ARGUMENTS.

III. THE CONVENING AUTHORITY ERRED WHEN HE FAILED TO REASSESS THE SENTENCE AFTER HE SET ASIDE THE FINDING OF GUILTY TO SPECIFICATION 1 OF CHARGE II AND DISMISSED THAT OFFENSE.

2. AS TO THE FINDINGS OF GUILTY OF A LESSER–INCLUDED OFFENSE UNDER CHARGE I, DOES ATTEMPTED MURDER BY ENGAGING IN ACTS INHERENTLY DANGEROUS TO OTHERS CONSTITUTE AN OFFENSE UNDER THE UNIFORM CODE OF MILITARY JUSTICE? (Citations omitted.)

ferral. The convening authority approved five separate periods of delay totaling 127 days, under RULE FOR COURTS-MARTIAL 707(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. The defense disputed the reasonableness of these periods of delay.

### Speedy-Trial Issue

In the first assignment of error, the appellant argues that the Government violated his right to a speedy trial under R.C.M. 707. After receiving evidence and hearing argument, the military judge denied the motion. Record at 112. The judge's essential findings are contained in the record following page 112. We conclude that the military judge correctly found that the 120–day period under R.C.M. 707 commenced with the preferral of charges. We also conclude that the military judge correctly found that the various periods of excludable delay were reasonable and that trial thus commenced within the 120–day period of R.C.M. 707.

R.C.M. 707(a) provides in pertinent part:

(a) *In general.* The accused shall be brought to trial within 120 days after the earlier of:

(1) Preferral of charges;

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4). . . .

Further, R.C.M. 707(b)(3)(B) specifies:

(B) *Release from restraint.* If the accused is released from pretrial restraint for a significant period, the 120–day time period under this rule shall begin on the earlier of

(i) the date of preferral of charges;

(ii) the date on which restraint under R.C.M. 304(a)(2)–(4) is reimposed. . . .

The analysis of this subsection provides as follows:

Subsection (3)(B) clarifies the intent of this portion of the rule. The harm to be avoided is continuous pretrial restraint. *See United States v. Gray,* 21 M.J. 1020 (N.M.C.M.R.1986). Where an accused is released from pretrial restraint for a substantial period, he will be treated the same as an accused who was not restrained. Therefore, unless the restraint is reim-

posed, the 120–day time period will run from the date of preferral . . . regardless of whether that event occurs before or after the accused was released from restraint.

MCM, app. 21, Rule 707 analysis, at 41.

The first determination we must make is on what date the R.C.M. 707 speedy-trial clock began to run. As they did at trial, the defense argues that the clock started and continued to run from the initial imposition of pretrial restriction on 10 December 1993. The defense reasons that since preferral of charges came 1 day after the appellant's release from pretrial restriction, this 1–day period does not constitute release for a significant period under the rule. This would put arraignment on the 263rd day following the initial restraint. Subtracting 127 days of excludable delay, the 120–day rule would still have been violated.

The Government argues that since no form of pretrial restraint was ever reimposed on the appellant after his release on 15 February 1994, the release was, *ipso facto,* for a significant period, and the clock was reset to zero and began to run anew with preferral of charges on 16 February 1994. Arraignment occurred on the 195th day after preferral. Subtracting 127 days of excludable delay, the 120–day period under R.C.M. 707 was not violated.

In denying the defense motion at trial, the military judge ruled in accord with the Government's position, relying on the analysis to Rule 707(b)(3)(B) and citing *United States v. Cornelius,* 37 M.J. 622 (A.C.M.R.1993). She specifically found that the speedy-trial clock started 17 February 1994, or with preferral of charges.

We first observe that we have been unable to find any reported decision that directly addresses our facts, and none has been cited to us. The *Cornelius* holding upon which the military judge relied is grounded on the fact that the break in restriction in that case stopped the speedy-trial clock, making the Government accountable only from the date of preferral of charges to arraignment. *Cornelius,* 37 M.J. at 626. The *Cornelius* court made no attempt to define the relevant timeframe for what constitutes a release from

restraint for a significant period. The facts in *Cornelius* differ from those in the case at bar. In *Cornelius*, there were 17 days of pretrial restraint, followed by 66 days to preferral of charges, then 71 days from preferral to arraignment.

There are a number of reported speedy-trial cases under R.C.M. 707 in which there has been a release from confinement and no reimposition of restraint. Generally, the courts have tended to define the relevant timeframe for finding that release from restraint had been for a "significant period" as the period from release from restraint to preferral of charges. *See United States v. Wagner*, 39 M.J. 832 (A.C.M.R.1994) (release from restraint for "over a week" prior to preferral was a significant period); *United States v. Reynolds*, 36 M.J. 1128 (A.C.M.R. 1993) (19 days between release from restraint and preferral of charges a significant period); *United States v. Callinan*, 32 M.J. 701 (A.F.C.M.R.1991) (release from restriction on 1 April and preferral of charges on 8 June held a significant period); *United States v. Campbell*, 32 M.J. 564 (A.C.M.R. 1991)(13 days between release and preferral a significant period); *United States v. Turk*, 22 M.J. 740 (N.M.C.M.R.1986), *aff'd on other grounds*, 24 M.J. 277 (C.M.A.1987) (18 days between release from restraint and preferral of charges a significant period). *See also United States v. Mickla*, 29 M.J. 749 (A.F.C.M.R.1989); *United States v. Wilkinson*, 27 M.J. 645 (A.C.M.R.1988); *United States v. Facey*, 26 M.J. 421 (C.M.A.1988).

▆▆▆ Obviously, if an accused is released from pretrial restraint and thereafter restraint is reimposed, the relevant timeframe to determine whether the release was for a significant period is to consider the period from release to reimposition of restraint. However, it does not automatically follow that where the accused is released from pretrial restraint and restraint is never reimposed, that the relevant timeframe to determine whether the release is for a significant period is to measure the period from release to preferral of charges. The significant period in the latter instance must necessarily continue up to the commencement of trial, for the reasons we discuss below. The primary reason for the "significant period" requirement in the rule is to preclude short, sham releases from restraint for "a few hours or a day," in order to stop the speedy-trial clock and obtain a zero restart of the clock on reimposition of restraint. *See United States v. Gray*, 26 M.J. 16, 22 (C.M.A. 1988) (Chief Judge Everett concurring in the result).

The drafters' analysis of R.C.M. 707(b)(3)(B) contemplates that even in a case where we find pretrial restraint, preferral of charges *while restraint continues*, then release from restraint with no reimposition of restraint, the speedy-trial clock will be reset to the date of preferral, and the accused treated the same as if he had not been restrained at all. The drafters' analysis is best understood by considering the predecessor statement of the rule.

Prior to Change 5 to the MCM[3] which became effective on 6 July 1991 and which included a revision of R.C.M. 707, then R.C.M. 707(b)(2) read as follows: "If charges are dismissed, if a mistrial is granted, or— *when no charges are pending*—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted." Emphasis added. In *United States v. Gray*, 21 M.J. 1020 (N.M.C.M.R.1986), *aff'd*, 26 M.J. 16 (C.M.A. 1988), characterizing the wording of the rule as "awkward," this court noted that in a release from restraint case, the two required determinations are: (1) that no charges were pending at the time of release; and (2) the period of release from restraint must have been significant. *Id.* at 1023–24. Addressing the key issue in the case, this court identified notification to the accused of preferred charges as the event which causes charges to be "pending" in the military justice system. The court found that a period of 47 days between release from pretrial restraint and notice of preferral of charges constituted a "significant period" under the rule, such that the speedy-trial clock began to run on the date of notice of preferred

---

**3.** Executive Order No. 12767 of 27 June 1991.

charges. On review, the U.S. Court of Military Appeals affirmed, with the case generating three separate opinions. *United States v. Gray*, 26 M.J. 16 (C.M.A.1988).[4]

All three judges of the Court of Military Appeals agreed that charges were not pending against the appellant in that case at the time of his release from confinement. *Id.* at 17. This was a key determination under the old formulation of the rule and one which, we submit from a close reading of the analysis to the current rule, the drafters sought to eliminate entirely in their reformulation of the rule in 1991. As to any illumination of the term "significant period," all three judges in the Court of Military Appeals agreed that Gray had indeed been released from confinement for a "significant period." Chief Judge Everett seemed to focus on the period between release and preferral of charges in stating: "[W]hen appellant was released from pretrial confinement on January 4, 1985, and this release was followed by 'a significant period' of almost a month's liberty, the earlier restraint became irrelevant. The stop watch was reset at zero." *Id.* at 22. As noted previously, Chief Judge Everett also offered that the "significant period" provision served primarily as a check on sham releases. Judge Cox agreed that the release from confinement in *Gray* was for a "significant period," but he did not offer any further definition of the term "significant period." *Id.* In the lead opinion, Judge Sullivan clearly was looking past the period of time between release and preferral in finding a "significant period." He stated the following:

> [I] note that appellant was previously confined for a period of 29 days. . . . After his release from confinement . . . he was not reconfined prior to the preferral of charges against him. . . . This was a period of approximately 34 days. *It also must be noted that he was not reconfined during the remaining 113-day period leading to his trial* . . . . Clearly the record supports

a finding that his release . . . was "for a significant period" of time.

*Id.* at 20 (emphasis added).

Shortly after *Gray*, the Court of Military Appeals decided *United States v. Facey*, 26 M.J. 421 (C.M.A.1988). In a 3–0 opinion authored by Chief Judge Everett, the court determined that certain travel restrictions imposed on the appellant in that case after he had been released from pretrial restriction did not constitute pretrial restraint for speedy-trial purposes. Accordingly, the court found no speedy-trial violation. In deciding that the speedy-trial clock started anew under the then R.C.M. 707(b)(2) version of the rule, Chief Judge Everett referred to the period between release from restraint to preferral of charges, and also looked past preferral in finding release from pretrial restraint was for a "significant period," writing as follows:

> Since charges were not preferred until much later—namely, March 27, 1985—the termination on November 15 1984, of the restraint to which appellant had been subject would preclude consideration for speedy trial-purposes of the earlier restraint. *Indeed, since no new restraint was imposed from November 1994 until appellant's trial, the new 120–day period would commence when the charges were preferred on March 27, 1985.*

*Facey*, 26 M.J. at 424 (emphasis added). *See* F.A. GILLIGAN & F.I. LEDERER, COURT-MARTIAL PROCEDURE § 17–72.30 (1991) (characterizing *Facey* as holding "when no additional pretrial restraint was imposed after release, accountability began upon the date when charges are preferred.").

■ Our reading of R.C.M. 707(b)(3)(B) comports with the drafters' analysis and is consistent with what we perceive to be the R.C.M. 707 policy goals of minimizing continuous pretrial restraint and promoting speedy trial of charges. *See Gray*, 26 M.J. at 21 (Everett, C.J., concurring in the result). The rule specifies "[i]f the accused is released

---

4. In the lead opinion, Judge Sullivan noted that the various interpretations of R.C.M. 707 suggested the need for a redraft of the rule. *United States v. Gray*, 26 M.J. at 20 n. 3. Notwithstanding Change 5 to the Manual, there may be work yet to be done here. The rule is not a model of clarity, and only when the rule is read in light of the pre–1991 version of the rule does the drafters' analysis of R.C.M. 707(b)(3)(B) become clearer.

from pretrial restraint for a significant period...." It does *not* read "if the accused is released from pretrial restraint for a significant period prior to preferral of charges." The defense and dissent would have us define the relevant timeframe (to determine whether a release from restraint is for a significant period) as the date of release to the date of preferral, which in this case is a single day. Then they would have us find that 1 day is not a significant period, without regard to the fact that the appellant remained at liberty for most of the time consumed in processing his case, that is from 15 February 1994 to arraignment on 30 August 1994.

Were we to adopt this reasoning, the preferral of charges could be readily manipulated to avoid the result the defense urges. For example, in this case, a trial counsel might conclude that when an accused is released from restraint prior to trial, a sufficient interval of days should be allowed to pass before charges are preferred to ensure that there exists a "significant period" between release and preferral. We cannot imagine that the drafters would have intended such gaming of the rule. It would artificially extend the processing time for a case, contrary to the primary purpose of the rule, which is speedy disposition of the charges. The analysis of the rule makes it clear that the drafters intended no such result.

■ Moreover, a construction of the rule which encourages military authorities to release persons from pretrial restraint in appropriate cases is to be preferred, the primary reason being that our system of military justice does not have a bail component. A reading of the rule which gives the Government a reset of the speedy-trial clock on preferral of charges when an accused is released from pretrial restraint and never rerestrained is desirable, without regard to the fact that preferral occurs shortly after release from restraint. Indeed, the same result should obtain even if preferral occurs sometime *before* release

from restraint, as the analysis to the rule contemplates.

In the case before us, the civilian and military police investigations identified the four Sailors, who came to be charged in this case, shortly after the shooting incident. Two Sailors, including the appellant, were restricted for approximately 2 months, and two remained at liberty. We presume the pretrial restraint decision was made on the basis of information developed in the early investigation of the case. The charges were preferred against all four accused on the same day, with pretrial restraint having been lifted for the two restricted men, never to be reimposed. Trial of the four accused started on the same day a number of months later. We find no reason to treat these cases differently for speedy-trial purposes.[5] All four accused were at liberty for most of the time that elapsed in the processing of their cases, and their trials began as a joint trial. We consider the release from restraint, coming as it did early in the processing of the cases, to have been in good faith and not a subterfuge to subvert the purposes of R.C.M. 707.

The military judge found that the various requests for delay were properly submitted in writing, that the convening authority had not abused his discretion in granting the requests, and that the delays were not unreasonable. We agree with the essential findings of the military judge, and we find no abuse of discretion by the convening authority in granting the requests for excludable delay on the facts of this case. Once these delays are excluded from the accountable period, we find that the trial occurred well within the 120–day requirement of R.C.M. 707(a).

■ We hold that where an accused is initially restricted for 67 days, then released with no reimposition of any pretrial restraint, the release is for a "significant period" where trial commences over 6 months after the release, thereby restarting the Government's accountability under R.C.M. 707 to the date of preferral of charges, notwithstanding that charges were preferred the day following the

---

**5.** Of course the nature and duration of any pretrial restraint must be considered in sentencing.

R.C.M. 1001(b)(1).

release from restraint. Since the period of time between preferral of charges and commencement of trial, less periods of excludable delay, was less than 120 days, we find no violation of R.C.M. 707 in this case.

Both at trial, Appellate Exhibit IV, and in the appellate brief, the appellant also cites to Article 10, UCMJ, 10 U.S.C. § 810 in support of his speedy trial motion. We find that the appellant was never confined nor were the conditions of restriction tantamount to confinement. Accordingly, we find no Article 10, UCMJ, 10 U.S.C. § 810, violation.

We conclude that the first assignment of error is without merit.

### Attempted Murder Charge

Under Charge I, the appellant was charged with attempted murder with premeditation.

■■ In her instructions to the members on findings, the military judge advised of the elements of attempted murder with premeditation, including the requirement that the appellant must have had a specific intent to kill. Record at 469–70. She went on to advise that the offense of attempted murder while engaging in acts inherently dangerous to another is a lesser included offense of attempted murder with premeditation. Record at 70–71. Ultimately, the members returned a finding of guilty as to this so-called lesser included offense under Charge I. Record at 492. As both appellate government and appellate defense counsel set forth in their briefs, an attempt to murder requires a specific intent to kill. Thus, attempted murder by engaging in acts inherently dangerous to others does not constitute an offense under the Code. *United States v. Roa,* 12 M.J. 210 (C.M.A.1982); MCM, Part IV, ¶ 43d and app. 23, ¶ 43. Accordingly, we will set aside the findings as to Charge I.

### Disposition

■ In taking his initial action, the convening authority set aside the findings of guilty as to the conspiracy to murder charge and dismissed that charge. We now will dismiss the attempted murder charge. This eliminates the two most serious guilty findings the members considered in sentencing.

The findings of guilty remaining are for aggravated assault with a firearm and wrongful discharge of a firearm—certainly serious offenses, but far less serious than the offenses for which the appellant was sentenced. Indeed the maximum permissible confinement is reduced from life to 9 years. MCM, app. 12. Given this disparity, it would be a highly artificial exercise for this court to attempt to conclude what sentence would have been adjudged with only the aggravated assault and wrongful discharge offenses before the court. *United States v. Peoples,* 29 M.J. 426 (C.M.A. 1990); *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

Our disposition renders moot the second and third assignments of error.

Accordingly, the findings of guilty as to Charge I and the specification thereunder are set aside, and Charge I and its specification are dismissed. The remaining findings of guilty as to Charges III and IV and the specifications thereunder are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Judge OLIVER, concurs.

LUCAS, Judge (dissenting):

I respectfully dissent after finding myself in irreconcilable disagreement with the majority's resolution of Assignment of Error I, which involves the interpretation and application of RULE FOR COURTS-MARTIAL 707(b)(3)(B), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.], one of the so-called reset provisions of the President's speedy-trial rule.

Our difference lies in the selection of the time period to be measured in determining whether there has been "a significant period" as that term is used in R.C.M. 707(b)(3)(B) so as to reset the speedy-trial clock. Selection of the time period to be measured is critically important. Indeed, it determines the outcome of this case. Using my reasoning, the R.C.M. 707 speedy-trial clock was not reset in this case and an R.C.M. 707 violation occurred mandating dismissal. Using the majority's measurement, the clock was reset and there is no R.C.M. 707 violation.

The appellant was placed in pretrial restriction on 10 December 1993. Some 67 days later, on 15 February, he was released from that pretrial restriction. The charges were preferred the following day, 16 February. Arraignment occurred several months later on 30 August 1994. Once released from pretrial restriction, there was never reimposition of any form of pretrial restraint.

When the appellant was placed in pretrial restriction on 10 December 1993, the President's 120–day speedy-trial clock was triggered, even though charges were not yet preferred. R.C.M. 707(a)(2); R.C.M. 304(a)(2). At the outset, it is important to note that the three triggering provisions of R.C.M. 707(a) all signal a significant change in the status of a servicemember. There is either some loss of liberty while awaiting trial, charges formally lodged against the servicemember, or punitive jurisdiction being exerted over a reservist. It is also important to note that all three conditions are treated equally. Each of the enumerated conditions imposed on a servicemember is considered significant enough to independently trigger the R.C.M. 707 speedy-trial clock.

The majority concedes that the R.C.M. 707 clock began running on 10 December 1993 when pretrial restriction was imposed on the appellant. Therefore, absent a resetting of the clock or an adequate permissible exclusion of delay from speedy-trial consideration, to avoid mandatory dismissal of the charges, the Government was obliged to arraign the appellant within 120 days. R.C.M. 707(a), (b)(1), (d). Obviously, arraignment in this case occurred well beyond 120 days from the inception of pretrial restriction.

The trial judge determined that significant delay had been properly excluded from speedy-trial consideration by the convening authority pursuant to R.C.M. 707(c). The majority holds that the trial judge was correct in so ruling. For purposes of this review, I assume that the delay was properly excluded.

Resolution of the R.C.M. 707 speedy-trial issue therefore hinges upon whether the clock was reset to zero at some point after 10 December 1993 pursuant to R.C.M. 707(b)(3)(B). The majority says that it was,

and then restarted on the date of preferral, which would put arraignment within the 120th day from that new start date. I conclude that the clock was never reset, the result being a violation of R.C.M. 707(a) and mandatory dismissal of the charges.

The plain language of R.C.M. 707(b)(3)(B) seems to fit the appellant's case precisely. That particular rule indicates that if an accused is released from pretrial restraint for a significant period, the 120–day period shall begin on the earlier of either the preferral date or date upon which pretrial restraint is reimposed.

The appellant was in pretrial restraint without charges being preferred, and then released. Preferral followed. There was no reimposition of pretrial restraint. I am of the opinion that, in a case such as the appellant's, we must measure the time period between release from pretrial restraint to preferral and determine whether that is a significant period. If it is, the 120–day speedy-trial clock is reset to zero upon release from pretrial restraint and restarted upon preferral. If that time period is not significant, the 120–day clock is not reset.

Using different reasoning, the majority concludes that because no form of pretrial restraint was ever reimposed following the appellant's release from pretrial restriction, the time period to be measured for R.C.M. 707(b)(3)(B) purposes is from release from that restriction to commencement of trial (arraignment).

It seems to me that when a servicemember is officially charged with a crime, because of the resultant stigma and potential financial, emotional, and other substantial adverse consequences necessarily involved in preparing for trial, including an interference with the performance of important military duties, and because the military's interests are best served with an expeditious resolution of a criminal case, the Government is obliged to get the case to trial with dispatch. Completely apart from any constitutional or statutory constraints, the President has set a specific time limit of 120 days. R.C.M. 707(a)(1).

Similarly, when a servicemember's liberty is adversely affected by pretrial restraint, even though charges have not been preferred, there is an equally important independent obligation of the Government to proceed to trial with dispatch. The President has set the same time limit. R.C.M. 707(a)(2).

The Presidential incentive for the Government to bring military criminal cases to trial within the time prescribed when either charges are preferred or pretrial restraint imposed is provided by the sanction of mandatory dismissal found in R.C.M. 707(d).

On the other hand, R.C.M. 707(b)(3)(B) seems to recognize that, with the speedy-trial clock running because of imposition of pretrial restraint, when an uncharged servicemember is set free from that restraint for a significant period, that person's status again changes significantly. The concerns about loss of freedom while awaiting trial, stigma, and the need for the servicemember to be occupied with defending himself or herself instead of performing important military duties are substantially diminished or even extinguished. It follows then that there is no need to apply the incentive of the speedy-trial rule, with its sanction of dismissal. R.C.M. 707(b)(3)(B) logically satisfies this reasoning by resetting the speedy-trial clock to zero in those cases. Under those circumstances, constitutional and statutory constraints, including the statute of limitations, will then again supply the speedy-trial incentive for the Government. However, the key for me is that the servicemember must be free of pretrial restraint and simultaneously uncharged for a significant period for the reset rule to apply.

My interpretation of R.C.M. 707(b)(3)(B) leads me to conclude that once reset to zero, the speedy-trial clock is restarted when a new R.C.M. 707(a) triggering condition arises, including preferral or reimposition of pretrial restraint.

In the appellant's case, the time period between release from restriction to preferral was one day. I do not find that to be a significant time period as that term is used in R.C.M. 707(b)(3)(B) because he was unrestrained and uncharged for only one day.

There was no real change in the appellant's status *visa-vis* the conditions the President believes important enough to require application of his speedy-trial clock. Instead, the appellant went immediately from the pretrial restriction kettle into the fire of preferred charges. Both are conditions significant enough to require application of the R.C.M. 707 clock. From the appellant's perspective, even though he now had his liberty restored, he immediately had to deal with the stigma and weighty adverse personal consequences of being formally charged with a crime.

Because there was no significant interruption of the conditions that would independently trigger R.C.M. 707(a), there should be no interruption of the obligation of the Government to continue to proceed to trial within the guidelines set by the President. As a result, by the express plain language of the rule, the speedy-trial clock was not reset. Because arraignment therefore occurred beyond the 120th day, dismissal is mandated by the President.

Had preferral occurred in this case simultaneously with imposition of pretrial restriction, the clock would have run without interruption to commencement of trial. Similarly, had pretrial restraint been uninterrupted, the clock would have run to commencement of trial. That is because R.C.M. 707 recognizes that both conditions are equally important. It should logically follow that when there is a period of pretrial restriction followed immediately by preferral, there should be no interruption of the R.C.M. 707 clock because the conditions mandating application of the clock have not diminished.

I have not found an opinion by our superior court in which they interpret R.C.M. 707(b)(3)(B), which became effective on 6 July 1991. Likewise, this court has not previously analyzed the current reset rule. However, the Army court has had occasion twice to publicly report on its interpretation of the current rule.

In *United States v. Cornelius*, 37 M.J. 622 (A.C.M.R.1993), the facts were very similar to the appellant's. That accused was placed in pretrial confinement for 1 day. A period of pretrial restriction followed immediately.

Preferral occurred more than 60 days after release from that restriction. Once released from pretrial restriction, no form of pretrial restraint was reimposed. Unfortunately, because of the wording of the opinion, *Id.* at 626, I am unsure whether the Army Court applied my reasoning or the majority's when it concluded that the R.C.M. 707 clock was reset to zero.

However, in *United States v. Reynolds*, 36 M.J. 1128 (A.C.M.R.1993), we again find facts very similar to the appellant's, with a clear indication by the Army Court that my reasoning was applied. In that case, there was a period of pretrial restriction tantamount to confinement, followed by pretrial restriction. Preferral occurred 19 days after release from that restriction. There was never reimposition of pretrial restraint. That court, as I do now, expressly measured the time from release from pretrial restriction to preferral to determine if that was a significant period as that term is used in R.C.M. 707(b)(3)(B). *Id.* at 1130. That court found that 19 days was significant. That court did not measure the time from release from restriction to commencement of trial, as the majority does in this case.

There are several reported decisions in which courts have interpreted the immediate predecessor to the current R.C.M. 707. *United States v. Gray*, 26 M.J. 16 (C.M.A. 1988), resulted from further review of our decision in *United States v. Gray*, 21 M.J. 1020 (N.M.C.M.R.1986). The pertinent parts of the former R.C.M. 707 are laid out in *Gray*, 26 M.J. at 17. At first blush, the former R.C.M. 707 seems significantly different from the current rule. However, upon a close reading of the former rule and after reading the opinions of courts interpreting it, I conclude that there is no significant difference between them with respect to the specific issue now under consideration, which is the determination of the effect on the R.C.M. 707 speedy-trial clock when there is interruption of pretrial restraint prior to preferral.

Three judges on our superior court in *Gray* wrote separate opinions regarding the issue. The facts were very similar to the appellant's. There was a period of pretrial restraint, followed by release, followed by preferral, with no reimposition of pretrial restraint. Chief Judge Everett concluded that the speedy-trial clock initially was started upon imposition of pretrial restraint. He further concluded that the time period of one month between release from pretrial restraint to preferral constituted a "significant period" as that term was used in the former R.C.M. 707, resetting the clock to zero upon release from restraint. He further held that the clock restarted upon preferral. *Gray*, 26 M.J. at 22. It seems clear that Chief Judge Everett used the same measurement then that I do now. Unfortunately, because of the wording of their opinions, it is difficult for me to determine if Judge (now Chief Judge) Cox and Judge Sullivan agreed with Chief Judge Everett about the time period to be measured when interpreting the reset rule.

In *United States v. Facey*, 26 M.J. 421 (C.M.A.1988), our superior court again interpreted the reset provision of the former R.C.M. 707. The facts again were very similar to the appellant's. There was a period of pretrial restraint, then release from that restraint, followed by a 4 month period before preferral. Trial commenced about 4 months after preferral. Once released, there was never reimposition of pretrial restraint. Because of the wording of the opinion, *Id.* at 424, it is again difficult to be certain about what time period our superior court thought determinative; the period from release from restraint to preferral as I do, or release from restraint to commencement of trial as the majority does.

In *United States v. Campbell*, 32 M.J. 564 (A.C.M.R.1991), there was a period of pretrial restriction interrupted by service of restriction imposed as unrelated nonjudicial punishment. Preferral occurred 13 days into service of that punishment. In interpreting the former rule, the Army Court held that the 13 day interruption of pretrial restriction was the significant period and that the speedy trial clock was reset to zero and started again upon preferral. It is unclear from the opinion whether, after service of the nonjudicial punishment restriction, pretrial restriction was ever reimposed. But because the court chose not to refer to the absence of further pretrial restraint, it can reasonably

be concluded that they, as I do now, found that fact to be irrelevant.

In *United States v. Miller*, 26 M.J. 959 (A.C.M.R.1988), *pet. denied*, 28 M.J. 164 (C.M.A.1989), another former rule case, the accused was placed in pretrial restraint, released from that restraint for 5 days while restricted for medical reasons to a hospital after attempting suicide, and then placed in pretrial restraint again upon release from the hospital. Preferral followed during the second period of pretrial restraint. That Court held that the 5 day interruption in pretrial restraint was the significant period, resulting in resetting of the speedytrial clock and a restart of the clock upon reimposition of pretrial restraint.

A similar result was reached by the Air Force Court in *United States v. Hulsey*, 21 M.J. 717 (A.F.C.M.R.1985), *pet. denied*, 22 M.J. 353 (C.M.A.1986), a case in which pretrial restraint was interrupted for 5 days. Preferral occurred after pretrial restraint was reimposed. The Court expressly measured the time between release from restraint and reimposition of that restraint and held that to be the significant period resetting the clock.

This court also interpreted the former rule in *United States v. Gray*, 21 M.J. 1020 (N.M.C.M.R.1986), *aff'd*, 26 M.J. 16 (C.M.A. 1988). In that case, there was a period of pretrial restraint, release from that restraint, and preferral later with no reimposition of pretrial restraint. The facts were very similar, then, to the appellant's case. Our court expressly measured the time between release from restraint to preferral, 47 days, and held that to be the significant period for reset purposes. *Id.* at 1024.

The majority departs from what I believe is the historical judicial interpretation of the reset rule by our Court and other service Courts. Their use of a new yardstick (release from pretrial restraint to commencement of trial) to determine whether R.C.M. 707(b)(3)(B) is triggered is unsupported by case law. Instead, in reaching their decision, the majority adopt the interpretation found in the analysis to R.C.M. 707(b)(3)(B) at Appendix A21–41, MCM. Beyond the issue of what weight should be given to an unattri-

buted comment in the Analysis section of the MCM, I believe that interpretation relied so heavily upon by the majority to be in direct conflict with the plain language of the rule and the reported decisions interpreting the current and former reset rules.

Applying the majority's interpretation of R.C.M. 707(b)(3)(B), if an uncharged Marine or Sailor is in pretrial restriction for 119 days, then released, with preferral occurring the following day, if restraint were never reimposed, and the trial commenced just short of 120 days after preferral, absent evidence of a subterfuge, the reset rule would apply. The R.C.M. 707 clock would be reset to zero at day 119, to be restarted the next day. The net effect would be to permit the Government almost 240 days to commence the trial with no R.C.M. 707 violation. I do not believe that to be a desirable result.

Because of its obvious importance, I urge both parties to present the issue to our superior court for resolution and clarification of its holdings in *Gray* and *Facey*.